No. 13,235.

THE EVANSVILLE AND TERRE HAUTE RAILROAD COMPANY
v. GUYTON.

NEGLIGENCE.—*Railroad.*—*Diligence Required in Selecting Employees.*—*Competency of Employees.*—It is the duty of a railroad company to exercise reasonable and ordinary diligence in the selection of its employees, having respect for the exigencies of the particular service required, to the end that it may ascertain their competency and fitness to be entrusted in such service.

SAME.—*Liability of Employer for Incompetence of Employee.*—*Injury to Co-Employee.*—In case an employee proves to be incompetent for the duty assigned him, and ordinary care has not been used in his selection, or if he be retained after notice of his incompetency, the employer will be liable to a co-employee whose injury results proximately from the lack of qualification of the fellow-servant, unless the person injured had notice of the incompetency or had equal opportunities with the employer to obtain notice.

SAME.—*Evidence.*—*Character of Injury, etc.*—In an action for personal injuries alleged to have been occasioned by the wrong of another, the plaintiff may give testimony showing the character and extent of his injury, the nature and intensity of the suffering therefrom; and, where the injury resulted from a railroad accident, testimony that the plaintiff immediately after the injury walked a quarter of a mile to flag another train, and became unconscious from loss of blood, pain and exhaustion, resulting from the injury, is admissible.

EVIDENCE.—*Proof of Specific Acts of Incompetent Employee.*—In such case, where the injury is claimed to have been caused by the incompetency of an employee of the defendant, an instruction to the jury that "any

evidence tending to show a specific act of incompetence is only admissible for the purpose of showing that the defendant had not exercised due care in the employment of, or retaining in service such employee, and to bring notice to the defendant of incompetence," was correctly refused.

From the Gibson Circuit Court.

*J. E. Iglehart* and *E. Taylor*, for appellant.

*A. Gilchrist*, *C. A. DeBruler* and *D. B. Kumler*, for appellee.

MITCHELL, C. J.—Guyton was severely injured in a collision, which occurred on the appellant railway company's road, on the 20th day of August, 1882, while serving in the capacity of brakeman on one of the company's trains. He brought an action to recover damages for the injuries sustained, and recovered a judgment in the Gibson Circuit Court, from which this appeal is prosecuted.

His case proceeded upon the theory that the collision resulted from the incompetency of Charles Stice, the conductor who had control of the train upon which the plaintiff was at the time employed as brakeman, and that the liability of the company grew out of its failure to exercise proper care in the selection of conductor Stice, whose alleged incapacity resulted in the collision.

There are certain undisputed facts in the case. For instance, there is no dispute but that the railway company put Charles Stice in charge of a wild train, as conductor, to run from Terre Haute to Evansville, on the date above mentioned, and that the train was being run upon telegraphic orders and not upon schedule time. The plaintiff was a brakeman on this train, which was called the " C. & E. train, special." Some fourteen miles from Vincennes, at a station called Oaktown, Stice received a message from the train dispatcher of the following tenor:

" *C. & E. Train, Special:*

" Run to Vincennes freight station regardless second sec-

tion train twenty (20), and to Smith's regardless eighteen (18).                                                C. J. H."

Smith's is a station between Oaktown and Vincennes.    It is conceded that the meaning of the .dispatch, as it would or should have been understood by a competent conductor, in ·connection with the schedule for regular trains, with which train dispatchers assume conductors are familiar, was, that Stice should run his train to Smith's, and wait there until number eighteen, a schedule train, and until the first section of number twenty, another schedule train, should pass, and then run to Vincennes, regardless of the second section of train twenty.    Instead of properly interpreting and executing the order, which is shown to have been correctly given, the conductor ran his train to Smith's, waited until number eighteen passed, and then, although it was within a few minutes of the regular schedule time of number twenty, started out with his wild train, under the mistaken impression that he was to run to Vincennes regardless of train twenty.    The result was a collision between the wild train and the first section of twenty, which was on its regular time, within a few miles of Smith's.

The evidence tends to show that Stice had been in the service of the company as brakeman for a period of six or seven years prior to the accident, and that he had been promoted to the position of freight conductor within a period of less than a month before the collision.    The testimony preponderates strongly, we may say overwhelmingly, in favor of the general good character, competency and skill of the conductor while serving in the capacity of brakeman, and of his general qualification to act as conductor of a freight train. He testified that he understood the order above set out, and that his pulling out his train in disobedience of it was the result of thoughtlessness and a mistake.

There was some testimony, however, from which the jury may have found that he was not possessed of sufficient familiarity with the time-cards, and with the technical language

of train orders, and was not sufficiently quick of apprehension to be able to construe and interpret an order in connection with a time-card, so as to be competent to act as the conductor of a wild train.

In view of the fact that Stice had been promoted to the position of conductor but recently before the accident, and that more than ordinary vigilance and aptitude were required for the control and safe management of trains such as the one he was entrusted with, and in view of the further fact that there is good evidence which tends to show that, contrary to the requirements of the general rules of the company, Stice had been assigned to duty as a conductor without the usual inquiry or examination in respect to his qualifications, we are constrained to hold that the evidence tends to support what the jury must have found, viz., that Stice was incompetent to act as conductor of a wild train, and that the railroad company was remiss in its duty in selecting him for that service.

While the railroad company, in relation to the plaintiff, was not bound to guarantee the absolute fitness of the conductor, it was its duty, nevertheless, to exercise reasonable and ordinary diligence, having respect for the exigencies of the particular service required, to the end that it might ascertain the qualification and competency of the conductor, and whether or not he was fit to be entrusted with the responsible station to which he was assigned. *Wabash R. W. Co.* v. *McDaniels,* 107 U. S. 454; Patterson Railway Accident Law, 313.

In employing its subordinates it was the duty of the company to exercise a degree of care commensurate with the responsibilities of the position in which they were to be placed, and with the consequences which might ensue from incompetence or unskilfulness on the part of those employed. In case peculiar fitness was required, or special qualifications demanded for the service to be performed, unless it was assured by the previous like service of the conductor of his fit-

ness, the duty of the company required it to institute affirm-ative inquiries in order to ascertain his qualification in that regard.

In case an employee proves to be incompetent for the duty assigned him, and ordinary care has not been used in his selection, or if he be retained after notice of his incompe-tency, the employer will be liable to a co-employee, whose injury results proximately from the lack of qualification of the fellow-servant, unless the person injured had notice of the incompetency, or had equal opportunities with the em-ployer to obtain notice. *Pennsylvania Co.* v. *Roney,* 89 Ind. 453; *Lake Shore, etc., R. W. Co.* v. *Stupak,* 108 Ind. 1; *Pittsburgh, etc., R. W. Co.* v. *Ruby,* 38 Ind. 294; *Chapman* v. *Erie, etc., R. W. Co.,* 55 N. Y. 579; *Mann* v. *President, etc.,* 91 N. Y. 495; *Baulec* v. *New York, etc., R. R. Co.,* 59 N. Y. 356.

It may be conceded that the evidence in the record fully establishes the fact that Stice had been for years a faithful, vigilant and competent brakeman, and that he had fairly earned his recent promotion to the position of freight con-ductor by long and diligent service for the company, and the idea is not to be tolerated that the law will pronounce a per-son, who is shown to be qualified by years of efficient service, incompetent because of a single mistake or act of forgetful-ness. The fact can not, however, be disguised that a single act, with the circumstances surrounding it, where the conse-quences are so overwhelming as the bringing of two trains of cars, running at a high rate of speed, into collision, on the same railroad track, may tend very strongly to show the in-competency of the actor to perform the service to which he was assigned.

It should be remembered that Stice had served the com-pany as brakeman until quite recently before the unfortunate accident, and while his service as brakeman is not to be dis-regarded in determining his competency to act in the more responsible position of conductor, it does not follow, without

more, that because he was an efficient and competent brakeman, and fit for promotion, he was also competent to take charge of and run a wild train. These considerations lead us to conclude that we can not disturb the verdict and judgment on the evidence.

At the trial, the plaintiff, after stating how the accident occurred and the manner and extent of his injury, was permitted to state, over objection, that as soon as he had extricated himself from the wreck produced by the collision, it occurred to him that a passenger train, designated as number five, would be due at that point in a short time, and remembering that as brakeman it was his duty to flag the approaching train, so as to prevent it from running into the wreck, he proceeded, in the disabled and suffering condition in which he described himself, along the track in the direction from which the train was approaching, for the distance of about one fourth of a mile, and flagged the train. He was permitted to state that in getting the flag he had fallen out of the caboose from weakness and loss of blood, and that he suffered great pain in going back to discharge the duty which he felt was incumbent upon him, and that, after flagging the train and entering one of the cars, he fell unconscious, in which condition he remained until the next day. It is objected that this testimony was improperly admitted, and that it could only have been introduced for the purpose of exciting the sympathy of the jury in the plaintiff's behalf and to induce them to compensate him for what might be considered a praiseworthy act, instead of compensating him for the injuries resulting from the collision. The testimony was competent. It was admissible, not because the act of flagging the train, however meritorious that was, could be considered by the jury in fixing the amount of compensation, but because the plaintiff was entitled to recover, not only for the permanent injury sustained, but for the physical pain and mental suffering occasioned by the injury. He was entitled to communicate to the jury the character and

extent of his injury, and the nature and intensity of the suffering resulting therefrom. If the plaintiff had voluntarily walked a quarter of a mile, or any other distance, immediately after receiving the injury, and, after enduring great suffering, had been taken up by a passing train, and had thereupon become unconscious from pain, exhaustion and loss of blood, resulting from the injury, it can not be doubted that the facts might have been stated. The facts following immediately in connection with the injury were none the less admissible because the plaintiff was impelled to exert himself by a high sense of duty to those on the approaching train. As brakeman upon the wrecked train, it was the plaintiff's duty, as it appeared to him under the circumstances, to flag the on-coming passenger train, and prevent the destruction of human life which might have followed had no warning been given. This was the highest conception of the duty of a brakeman. That the plaintiff had the courage and manliness to perform it, regardless of his own suffering, is to be spoken of in commendation and praise.

Some other rulings of the court relating to the admission of evidence upon matters of minor importance are the subjects of criticism. We have examined the questions, and, without delaying to state them in detail, we have been unable to discover any error in that connection. So, in respect to certain alleged extra-professional statements made by counsel in addressing the jury, of which the appellant complains, it is only necessary to say, if the legitimate privileges of debate were violated, the matter was set right by the court in such manner as that no harm could have resulted.

The objections to the instructions given by the court upon the request of the plaintiff below are not of sufficient importance, nor are they presented in such a manner as to require that they be separately stated and commented upon. A careful examination fails to disclose any valid objection to those complained of.

The appellant complains on account of the refusal of the court to give the following instruction:

" It is the part of wisdom for railroad corporations to take men employed by them from inferior positions and place them in higher ones, as they thus hold out the highest inducement to those in their employ to become skilful and faithful in the performance of their duties. The company has the means of ascertaining accurately the habits and character of its men, and to fill all vacancies with those who are known to be skilful and deserving."

As a statement of the general policy proper to be observed by railroad corporations in respect to the advancement of their employees, the instruction asked was certainly, so far as we are advised, unobjectionable ; but the instances are rare in which it is proper for a court to declare as matter of law whether or not a certain policy as applied to the management of a particular business is wise or unwise. These are questions of fact for the jury, rather than questions of law for the court. *Unruh* v. *State, ex rel.*, 105 Ind. 117.

Instructions should state legal principles applicable to the facts of the case, and not mere general rules of policy which may, or may not, be wise and proper in the conduct of a particular business. *Union Mut. L. Ins. Co.* v. *Buchanan*, 100 Ind. 63.

The following instruction was also asked and refused :

"Any evidence of the plaintiff tending to show a specific act of incompetence on the part of Stice, conductor, if there is any such evidence, is only admissible for the purpose of showing that the company had not exercised due care, prudence and caution in the employment of, or retaining in service of a careful, prudent and skilful conductor, and to bring notice to the defendant of incompetence."

While a specific act or mistake will not necessarily establish incompetence, as has already been remarked, a single act may be of such a character, and may involve such consequences as, with the surrounding circumstances, to indicate

The Evansville and Terre Haute Railroad Company *v*. Guyton.

want of qualification on the part of the actor. Such acts are usually resorted to by witnesses as a basis for an opinion as to the qualification of the person whose competency for a particular service is in question. In such cases the acts, with the accompanying evidence, are proper to be considered by the jury. *Pittsburgh, etc., R. W. Co.* v. *Ruby, supra.*

The court also refused to charge that " Specific acts of negligence are not competent to show that the conductor, Stice, was guilty of negligence in producing the collision, as charged in the complaint, if it were on a different occasion."

While the foregoing is undoubtedly a correct statement of the law, when considered in connection with evidence to which it is applicable, the refusal of the court in the present case is not available to the appellant.

The appellant's theory, and that of its witnesses, was that the collision was attributable, not to the incompetency of Stice, but to his neglect. The appellant impliedly, at least, admitted the negligence of Stice, but insisted that he was not incompetent. There was no evidence to which the instruction was applicable.

We have discovered no error justifying a reversal. The judgment is affirmed, with costs.

Filed May 10, 1888; petition for a rehearing overruled Sept. 19, 1888.