The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Champion.

———————◆———————

No. 985.

## THE CHICAGO, ST. LOUIS AND PITTSBURGH RAILROAD COMPANY *v.* CHAMPION.

EVIDENCE. — *Results of Tests or Experiments.— Personal Injury.*— Where evidence is offered to prove the results of a test or experiment as to the cause of an injury, it is not error to exclude such testimony if there has been a failure to show, or offer to show, that the test or experiment was made under substantially the same conditions as existed at the time the injury occurred.

SAME.—*Incompetent Testimony.—Motion to Strike Out.*—If testimony is partly competent and partly incompetent, before any question can be saved thereto, a motion must be made to strike out the incompetent testimony, and that part only.

SAME.—*Motion to Strike Out, When Too Late.*—Where evidence is admitted without objection, a subsequent motion to strike out comes too late.

SAME.— *Objection to.— Specific.*—Objection to the admissibility of evidence should be specific.

INSTRUCTION TO JURY.—*Master and Servant.—Risks Incident to Service. —Presumption.—Burden of Proof.*—The court refused to give the following instruction: "Among the risks assumed by the employe is that arising out of the negligence of a coemploye engaged in the same service. The railroad company is presumed to have discharged its duty to its employe; and when an employe brings an action to recover damages for an injury received in the service of the company, the burden is on the employe to overcome this presumption." Such refusal was not error, where the jury were instructed generally that the plaintiff must prove the material allegations of his complaint.

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Champion.

MASTER AND SERVANT.—*Incompetent Coemploye, Liability of Master for.* —*Duty of Master.*—*Notice.*—If the master finds it necessary, as he may, at times, to employ and retain incompetent servants, he should either inform their coemployes of that fact, or give them a reasonable opportunity to acquire knowledge of such fact, before he can screen himself from the consequences of such incompetency.

MISCONDUCT OF COUNSEL.—*Question, How Saved.*—Before any question as to misconduct of counsel during the progress of the trial can be saved, the court must be requested to correct the injury done, and if the court refuses to correct the injury, the complaining party must except thereto.

VERDICT.—*Sufficiency of Evidence.*—That the evidence is sufficient to sustain the verdict, see opinion.

From the Marion Superior Court.

*S. O. Pickens* and *C. W. Moores,* for appellant.

*G. W. Cooper, J. E. McCullough* and *L. P. Harlan,* for appellee.

DAVIS, C. J.—Appellee, in the court below, recovered damages in the sum of two thousand, two hundred and fifty dollars on account of personal injuries.

The case in brief, in behalf of appellee, may be stated as follows:

He was in the employ of appellant as a switchman, or yard brakeman, in its yards near the city of Indianapolis,—it being a part of his duty to couple cars. One Leonard was also in the employ of appellant as a brakeman. Leonard was inexperienced, incompetent, and negligent, of which facts appellant had knowledge at the time it took him into, and during all the time it retained him in, its service, but the appellee had no knowledge thereof, never having worked with Leonard before the time of the injury. In railroad language, a heavily loaded car had been "kicked" by the locomotive (put in motion by a push from the locomotive and caused to go under the influence of the momentum thus acquired) down the side track, to be coupled to another car standing thereon. The side track was down grade six inches in one hun-

dred feet. Leonard was riding the car thus "kicked," and the brakes thereon were set. As it approached the standing car, which was loaded with lumber projecting over the end, the appellee went between the cars, and under the lumber, to enter the link and make the coupling. Through his negligence—his lack of experience and competency—Leonard suddenly released the brakes on the moving car, and thereby caused the same to quickly spring forward catching appellee's hand between the drawbars, without any fault or negligence on his part.

On this theory of the case counsel for appellant earnestly contends that there are several prejudicial errors disclosed by the record.

The first question we will consider brings in review the action of the trial court in refusing to allow appellant to prove on the trial the result of a certain test or experiment made by appellant. The purpose in proving such test was, if such proof had been permitted, to show that if said Leonard was inexperienced, incompetent, and negligent, in manner and form as charged in the complaint, such act of negligence on his part could not have been the proximate cause of appellee's injury. It is insisted that the evidence so offered was worth something at least, as tending to prove that the injury could not have been, in the nature of things, the result of such alleged act of negligence on the part of Leonard.

The offer referred to was made in the manner following, that is to say, the witness, Henry Smith, testified that he had been in the service of appellant as switchman in the yards for three months, and that about one month before the trial, he was present when a test was made with reference to letting down a car,—on the track where the accident in question occurred more than one year prior to that time,—and having it coupled to another car.

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Champion.

The witness was then asked this question: "What kind of a car was used in letting it down on the siding?"

Objection was made by counsel for appellee, and counsel for appellant then said:

"May it please the court, we propose to show by this witness that about one month ago, three weeks or a month ago, a test was made on siding No. 2, the siding on which this accident took place, at about the same place at which it took place, to wit, about three or four car lengths west of the connection of that siding with the other track, at that point, by letting a P. R. R. gondola car of the same kind as the one that was being let down at the time when this plaintiff received his injury, and having it coupled on to a stationary car standing on the track at about the same place the car was standing when he undertook to make the coupling and was injured; that on this P. R. R. car, on the occasion of the test, was Mr. Leonard, the same brakeman who was on the car at the time of the accident, and that the car was running at a speed of about three miles an hour with the brakes set on it; and that when within about eight or ten or twelve inches of the car on which it was to be coupled, the brake was let off by Mr. Leonard, the brakeman, and that upon the letting off of that brake it did not show an increase of the speed of the car; and, in addition to that, we propose to show that it was on a cold day, and that the car was kicked back by an engine from about the place where the car was kicked on the occasion when the accident occurred."

No other question was asked the witness. The offer, we presume, was so made in response to the question hereinbefore set out.

The court sustained the objection of counsel for appel-

lee, and excluded the testimony so offered, to which ruling appellant objected.

It is urged by the learned counsel for appellant, that under the circumstances disclosed in this case the authorities sustain the proposition that when experiments are shown to have been made under essentially the same conditions, the courts will hold that evidence of the result of such experiments is admissible. *Lake Erie, etc., R. R. Co.* v. *Mugg, Admr.*, 132 Ind. 168; *Eidt* v. *Cutler*, 127 Mass. 522; *Commonwealth* v. *Piper*, 120 Mass. 185; *Lincoln* v. *Taunton, etc., Mfg. Co.*, 91 Mass. 181; *Sullivan* v. *Commonwealth*, 93 Pa. St. 284; *Smith* v. *State*, 2 Ohio St. 512; *Chicago, etc., R. R. Co.* v. *Spilker*, 134 Ind. 380.

See, also, as bearing on the question: *Medsker* v. *Pogue*, 1 Ind. App. 197; *Cleveland, etc., R. W. Co.* v. *Wynant*, 114 Ind. 525; *Ramsey* v. *Rushville, etc., Gravel Road Co.*, 81 Ind. 394; Best Prin. Ev., sections 251, 252, 506, 507, 644; 1 Greenleaf Ev. (15th ed.), sections 52, 53, 488; 7 Am. and Eng. Encyc. of Law, p. 58; *Hawks* v. *Inhabitants Charlemont*, 110 Mass. 110; *Clark* v. *Willet*, 35 Cal. 534.

The appellant did introduce evidence of expert witnesses, as it had the right to do, tending to show that the velocity or speed of a car would not be suddenly and materially increased (that is to say, that a car would not spring or jump forward), upon the release of the brake, as it was claimed by and in behalf of appellee to have done on the occasion in question.

But, so far as the offer under consideration is concerned, the difficulty is, if the law was conceded to be as contended for by counsel for appellant,—and as to this question we express no opinion,—that neither the evidence nor the statement accompanying the offer, in the case in hand, shows that the essential conditions at the

experiment were the same as those at the injury.    There was neither evidence nor statement that the track or car was in essentially the same condition, or whether the brake was tightly or loosely set, or whether the car was kicked hard or easy.    If it appeared that the track and car were, on the two occasions, substantially the same; that the brake was set in the same manner; that the car was kicked with the same force; and that in all other respects the conditions were essentially the same, and the offer to prove the result of such experiment was made in response to a proper and pertinent question, this court would be required to enter upon the consideration of, and to decide, the interesting and important question so ably discussed by learned counsel for the respective parties, both in oral argument and in the exhaustive briefs filed in the case; but without further discussion it will suffice to say that if the offer was in other respects properly made, there was no error in the ruling of the trial court in excluding the evidence, because of the failure to show, or offer to show, that the test or experiment was made under substantially the same conditions as existed at the time the injury occurred.

On the question as to what is necessary in order to present in this court for review the ruling of the trial court in excluding offered evidence, see *Toledo, etc., R. R. Co.* v. *Jackson,* 5 Ind. App. 547 (554); *Kern* v. *Bridwell,* 119 Ind. 226; *Gipe* v. *Cummins,* 116 Ind. 511.

"It has long been the settled rule in this State that the exclusion of testimony can only be made available by asking a pertinent question of a witness on the stand and, if objection is made, stating to the court what the witness will testify to in answer to said question, and if the court sustains the objection, reserving an exception." *Toledo, etc., R. R. Co.* v. *Jackson, supra.*

It is next insisted that the court erred in refusing to

give two instructions asked by appellant. In this connection we will briefly refer to the instructions given. The court fully and explicitly instructed the jury that in order to entitle appellee to recover, it was incumbent on him to prove, by a preponderance of the evidence, that he was in appellant's employ; that while acting in the scope of his employment, and without fault on his part, he was injured by reason of the negligence of Leonard, a coemploye; that Leonard was inexperienced and incompetent; that appellant employed and retained said Leonard with full knowledge of his inexperience and incompetency; that appellee did not know, and could not, by the exercise of ordinary care on his part, have discovered Leonard's incompetency prior to the time he was injured.

We quote the following from the instructions: "As a general rule, when a person enters into the employ of a railroad company, he is held to assume all the risks incident to the kind of service in which he engages, including the risks of accidents by reason of the negligence of his coemployes in the employ of the same company; and for injuries resulting to him by reason of the negligence of any of his coemployes, the railroad company is not liable. This general rule, however, is based upon the assumption that the railroad company has discharged its duty to its employe in the employment or retaining in its employ such coemploye. If it has not, but has been guilty of negligence in this respect, then the general rule above stated is subject to qualifications, which I will endeavor to explain in defining more particularly the duty of the defendant to the plaintiff."

And Judge Howe then proceeded at length to define the duty of appellant, in the course of which, he said: "While the defendant, in relation to the plaintiff, was not bound to guarantee the absolute fitness of Leonard

as a brakeman, it was its duty, nevertheless, to exercise reasonable and ordinary diligence."

With reference to whether or not he was competent and fit for the service in which he was engaged—but as the instructions given are conceded to be correct—it is not necessary to set them out in full, or to consider them further than to say that they fully and clearly state the law applicable to the case, and the theory on which it was tried, unless the instructions refused, to which counsel have called our attention, should have been given in addition.

The first reads as follows:

"2. Among the risks assumed by the employe is that arising out of the negligence of a coemploye engaged in the same service. The railroad company is presumed to have discharged its duty to its employe, and when an employe brings an action to recover damages for an injury received in the service of the company, the burden is on the employe to overcome this presumption."

It is elementary that when the master has exercised reasonable care, as stated and defined by the court in the instructions given, in the employment of competent servants, the employe assumes the risk arising out of the negligence of such coemployes engaged in the same line of business. It is also elementary that when the master knowingly employs and retains in his service an incompetent servant, an employe who enters his service, in the same line of business, in ignorance of such incompetency, and who, in the exercise of ordinary care, could not discover such incompetency, does not assume the risk arising out of the negligence of the incompetent coemploye.

These principles are so familiar that the citation of authorities is hardly necessary. See *Griffin* v. *Ohio, etc., R. W. Co.*, 124 Ind. 327; *Evansville, etc., R. R. Co.* v. *Guyton*, 115 Ind. 450; 7 Am. & Eng. Encyc. of Law, p.

844; *Ohio, etc., R. W. Co.* v. *Collarn,* 73 Ind. 261; Wood Master and Servant, section 349, 2d ed.

In view of these principles, the first part of the instruction quoted is too narrow—not sufficiently comprehensive—as applied to the evidence to which it is evidently directed. The fact that the instruction, in part at least, is correct as a general statement of the law, does not cure the defect in that part wherein the jury are unqualifiedly and unconditionally told, in substance and effect, that appellee assumed the risk arising out of the alleged negligence of the incompetent coemploye. *Louisville, etc., R. W. Co.* v. *Shanks,* 132 Ind. 395; *Goodwine* v. *State, ex rel.,* 5 Ind. App. 63; *Howlett* v. *Dilts,* 4 Ind. App. 23.

When this instruction is construed in the light of the instructions given, the correctness of which is not questioned, its effect, if given, could only have been to confuse and mislead the jury.

It should, in this connection, be borne in mind, as we have before shown, that the court instructed the jury, clearly and unequivocally, that before appellee could recover, it was incumbent on him to prove by a preponderance of the evidence, that Leonard was inexperienced and incompetent; that appellant employed and retained him in its service with full knowledge of his inexperience and incompetency; and that appellee did not know, and could not, by the exercise of ordinary care, have discovered Leonard's incompetency prior to the time he was injured.

In view of these instructions, if instruction number two, under consideration, was otherwise correct, as an abstract proposition of law, on what theory should the court have said to the jury that "among the risks assumed by the employe is that arising out of negligence of a coemploye engaged in the same line of service?"

If appellee was bound to prove that appellant employed and retained an inexperienced and incompetent co-servant engaged in the same line of service in which he was employed (for the company for the first time on the occasion on which he was injured), and that he did not know, and could not, by the exercise of reasonable care, have discovered Leonard's inexperience and incompetency, before he could, in any event, recover in the action, what pertinency could the first part of the instruction have?

Under such circumstances, appellee certainly did not assume the risks arising out of the negligence of Leonard. The tenor and effect of this part of the instruction is, that notwithstanding the fact that appellant may, with full knowledge of the inexperience and incompetency of Leonard, have employed and retained him in its service, and that appellee did not know, and could not, by the exercise of reasonable care, have discovered the inexperience and incompetency of Leonard, yet he assumed the risks arising out of the negligence of his said coemploye. If it could be said that he assumed the risk under such circumstances, then, as a matter of course, appellee was not entitled to recover for injuries sustained on account of the alleged negligence of his coemploye, and the only logical conclusion would be that the appellant should have recovered in the action.

This instruction, as we have before observed, contains two distinct propositions, and if either of these propositions is erroneous, as applied to the case, the familiar rule is that there was no error in refusing to give the entire instruction as asked.

In conclusion, however, on this branch of the case, we will add a few words concerning the second part of the instruction. The proposition therein contained, so far as applicable to the case, if conceded to be correct,

is, in our judgment, substantially covered by the other instructions given. As we understand the instructions given, they proceed upon the theory that appellant was presumed to have discharged its duty in all respects, towards appellee, and that the burden rested on him to show that such duty had not been performed. When the facts which he was required to prove were established, they overcame the presumptions in favor of appellant.

It is next insisted that the court erred in refusing to give the following instruction:

"11. If you find from the evidence, that in the reasonable and careful operation of railroads there is no way in which a reasonably careful and intelligent man can acquire the experience necessary to render him a skillful and competent yard brakeman, except by actual service in that capacity, and that in the exercise of ordinary care, in the reasonable and careful operation of railroads, it is necessary to employ and put into the service as yard brakemen men who have had no former experience as such, then I instruct you that when a man enters the employ of a railroad company as a yard brakeman, he impliedly assumes the risks of accident caused by the inexperience of his fellow yard brakeman in that service."

The principle enunciated in this instruction goes to the foundation of the cause of action stated in the complaint. This instruction lays down the broad general proposition that if it ever becomes necessary for a master to take into his employ an inexperienced and incompetent yard brakeman, then it is the law, in all cases, that the coservant assumes the risks arising from the negligence of such inexperienced and incompetent yard brakeman.

On the contrary, the law, as we understand it, is that appellee had the right to assume that appellant had ex-

ercised reasonable care in the employment of competent brakemen, and that if the company found it necessary, in the reasonable and careful operation of its railroad, to employ inexperienced and incompetent brakemen, he would be informed of such fact, or, at least, be given a reasonable opportunity to learn such fact before being placed in a perilous position. *Evansville, etc., R. R. Co.* v. *Guyton, supra;* Wood Master and Servant, *supra.*

The rule that an employe, on the presumption that the master had discharged his duty, assumes all the risks ordinarily incident to the employment in which he engages, is, as before stated, elementary, but when it becomes necessary, in the operation of a railroad, to employ an inexperienced and incompetent brakeman, his coemployes, in the absence of knowledge, or an opportunity to acquire such knowledge, of his inexperience and incompetency, can not be said to have assumed the risks of accident caused by the inexperience and incompetency of such servant. 7 Am. & Eng. Encyc. of Law, 844, and authorities hereinbefore cited.

Moreover, the instruction entirely ignores the question as to whether appellee had knowledge of any necessity for employing such inexperienced and incompetent brakemen in the same service in which he was engaged. It occurs to us that in any view which might be taken of the question the instruction is defective on account of such omission. If this is true, there was no error in any event in refusing to give the instruction.

"The rule that the court is not bound to give an instruction unless it is correct as it is written, is well settled, and, under this rule, it has been often held that unless the instruction as asked is expressed in proper terms, the court may refuse to give it." *Rogers* v. *Leyden,* 127 Ind. 150.

If this instruction is correct, then there was no breach

of duty on the part of appellant in employing and retaining in its service a brakeman, with full knowledge of his inexperience and incompetency, and placing him on the moving car in question, to operate the brake and perform such other duties as might devolve upon him, in an attempt to make the coupling, without any knowledge, or opportunity on the part of appellee to learn, of such inexperience or incompetency.

The reasons for the fellow-servant rule are fully discussed by Judge HACKNEY in the recent case of *New Pittsburgh Coal & Coke Co.* v. *Peterson,* 136 Ind. 398, and the nonliability of the master for damages sustained by one servant on account of the negligence of his coemploye is based on the theory that he has employed skillful and diligent servants, and that he should not be held responsible for the consequences of their subsequent unfaithfulness, unless he continues them with knowledge of such unfaithfulness. It follows, therefore, that if the master finds it necessary, as he may at times, to employ and retain incompetent servants, he should either inform their coemployes of that fact, or give them a reasonable opportunity to acquire knowledge of such fact, before he can screen himself from the consequences of such incompetency. See, also, *Pennsylvania Co.* v. *Long,* 94 Ind. 250 (256); *Indianapolis, etc., R. W. Co.* v. *Johnson,* 102 Ind. 352; *Pittsburgh, etc., R. W. Co.* v. *Adams,* 105 Ind. 151.

In our opinion, the instructions given by the learned judge who presided at the trial in the court below covered the case in every phase, and fairly and clearly presented the law applicable and pertinent thereto to the jury, and that there was no error in refusing to give the instructions asked.

It is next urged that appellant's motion for a new trial should have been granted on account of the alleged mis-

The Chicago, St. Louis and Pittsburgh Railroad Co. *v.* Champion.

conduct of appellee's counsel in his closing argument to the jury. Whether the statement complained of goes beyond the line of legitimate argument, we need not determine. It appears that upon the making of the statement counsel for appellant interrupted him and objected and excepted to the statement, and that thereupon the court stated to counsel, in the presence of the jury, that he should keep within the record; and that nothing further was said or done by the court or counsel, except appellee's counsel said to the jury that he desired to keep within the record. There was nothing said or done by appellant's counsel to indicate that he was not entirely satisfied with the ruling of the court then and there made. No exception was taken to the court's ruling, and no motion was made asking the court to go further in the premises.

"It is now settled that in order to save any question in relation to the misconduct of counsel during the progress of the trial, the court must be called upon to correct the injury done; if the court refuses to do so the injured party may except, and thus save the question involved for the consideration of this court." *Staser* v. *Hogan*, 120 Ind. 207 (222); *Indianapolis Journal, etc., Co.* v. *Pugh*, 6 Ind. App. 570; *Maybin* v. *Webster*, 8 Ind. App. 547.

It is next insisted that the verdict of the jury is not sustained by sufficient evidence, and is contrary to law. The evidence was conflicting as to whether the alleged negligence and carelessness of Leonard in suddenly loosening the brake of the moving car when near the other car,—at the time and in the manner claimed by and in behalf of appellee,—caused the car to unexpectedly increase its speed or to jump forward, thereby catching appellee's hand when he was engaged in his attempt to make the coupling. Counsel for appellant

contend that appellee's theory was impossible and absurd; that the act of Leonard in suddenly loosening the brake on the moving car could not, in the nature of things, have been the proximate cause of the injuries sustained by appellee; that the moving car could not, under the circumstances, have increased its speed or sprung forward; that such a theory is contrary to the laws of force and motion; that appellee evidently miscalculated either the speed of the moving car or the time in which he could make the coupling; that the accident was purely accidental, such as is likely to happen at any time in that business; and that in no event can the misfortune be charged to the alleged careless act of Leonard.

We will not undertake to epitomize the entire argument so forcibly made on this branch of the case, and will only say there is ample evidence in the record tending to support every point in issue which was incumbent on appellee to prove. The question as to the credibility and weight of the evidence,—the probability as to whether the accident occurred in the manner stated, —was for the jury, and this court can not, under the well recognized rule so often enunciated in this State, disturb the verdict of the jury on the evidence.

On the trial, counsel for appellee asked the witness, Calvin T. Mann, to state what facts, if any, he had observed in the conduct of Leonard affecting the question as to whether he was a man of skill in the discharge of the duties in which he was engaged. If the testimony sought to be elicited by the witness was competent, his previous examination discloses that he was qualified to testify on the subject. The answers were not, in some respects, responsive to the questions. Objection was made to the questions, but no motion was made to strike

out the answers, or any part thereof, but the court, on his own motion, struck out a part of one of the answers.

''It is quite clear that part, at least, of the testimony of the witness was competent, and as the objection does not separate the competent from the incompetent, there was no error in overruling it.'' *McGuffey* v. *McClain*, 130 Ind. 327 (331), and authorities cited.

The questions, so far as they sought to elicit the facts which the witness had observed in relation to the manner in which Leonard discharged his duties, the character of those duties and what was necessary to be done in discharge thereof, were not, so far as any objection has been urged thereto, incompetent, irrelevant, or immaterial, and, so far as the answers were not responsive to the questions asked, no question has been properly saved or presented for review by this court. *Howlett* v. *Scott*, 100 Ind. 485.

This witness was asked, without objection, to state what preliminary training or practice, if any, was usual and necessary to enable one to perform the duties of a switchman in a yard with safety and skill. The answer of the witness was responsive to the question, and afterwards counsel for appellant moved the court to strike out such answer on the ground that it was immaterial, incompetent, and improper, and did not tend to prove any issue in the case. There was no error in this ruling. See *Falvey* v. *Jackson*, 132 Ind. 176.

Where evidence is admitted without objection, a subsequent motion to strike it out comes too late. *Brown* v. *Owen*, 94 Ind. 31.

The witness Shea was allowed to describe to the jury what he saw in relation to the manner in which Leonard discharged his duties for appellant near the time of the accident. The only objection to which our attention has

been called, that was made to this testimony in the court below was a general one.

In the language of Judge HACKNEY, in a recent case: "Unless the objection to offered evidence be sufficiently specific to enlighten the trial court and enable it to pass upon the sufficiency of such objection and to observe the alleged harmful bearing of the evidence from the standpoint of the objector, no question can be presented therefrom in this court." Swaim v. Swaim, 134 Ind. 596.

The objection made in this case presents no question for our consideration. Ohio, etc., R. W. Co. v. Walker, 113 Ind. 196; Clark, etc., Tp. v. Brookshire, 114 Ind. 437 (444); Pennsylvania Co. v. Horton, 132 Ind. 189.

We have examined all the questions discussed by counsel, and find no error in the record.

Judgment affirmed.

REINHARD, J., did not participate in the decision of this case.

Filed Jan. 10, 1894.

ON PETITION FOR A REHEARING.

DAVIS, C. J.—The learned counsel for appellant, in a strong and earnest brief, insists that a rehearing should be granted on the question arising out of the refusal of the trial court to give the eleventh instruction asked by appellant.

Counsel urges "that the opinion upon this question is unsound in reason, and is in the face of, and against, the elementary rules which everywhere prevail," and, further, that our conclusion "arises out of a radical misapprehension of the doctrine of this instruction."

If counsel is correct in his contention, the appellant is entitled to a rehearing.

The recognized ability of counsel, and the vigorous attack made by him on the position of the court, in con-

nection with his assertion that "I have never, since my call to the bar, felt my position upon a legal proposition which had not heretofore been settled so absolutely impregnable," together with his statement that "I might the better endure the chagrin of my defeat," if "the opinion upon this question was based upon sound reason," have prompted us to again carefully consider the instruction.

The principle which underlies this instruction is based on the proposition that should the jury find, from the evidence, that, in the reasonable and careful operation of railroads, it is necessary to employ and put into the service as yard brakeman inexperienced men, "then there could be no breach of duty on the part of appellant in employing such inexperienced person," without reference to whether appellee had any notice or knowledge of such necessity, or whether he had any knowledge or opportunity to learn of such inexperience of his co-employe, for the reason, as contended by counsel, that appellee must be held to know that such inexperienced men were likely to be employed in that line of service; and that when he entered into that service, he assumed all the risks growing out of such inexperience and incompetency.

Counsel urges that in the very nature of things, there must be a beginning point for employes in the train service of railways, and that the beginner at that point is without experience; "that the lowest grade of service in the operation of railroad trains is that of yard brakeman, at which appellee and his coservant, Leonard, were engaged at the time of the accident in question; that the only way in which a person can acquire competency as a yard brakeman is by actual experience in that work," and, therefore, when appellee entered the service of appellant he assumed all the risks incident to

the subsequent employment of such inexperienced and incompetent yard brakemen as Leonard; and that the injuries sustained by appellee, when engaged in the hazardous business of attempting to make the coupling, by reason of the inexperience and incompetency of Leonard on the first occasion that they ever worked together, without any previous knowledge or opportunity to acquire knowledge concerning him, must be regarded as the result of a casual accident, and must rest entirely on appellee.

In other words, the contention, as we understand it, resolves itself into this, that in the absence of actual knowledge appellee was bound to take notice, when he entered that service, of the fact that it was necessary for the company to employ and put into service as yard brakemen inexperienced and incompetent men; that whether he knew of such necessity was immaterial, and, also, it was immaterial whether he had any warning or knowledge as to the incompetency of Leonard, or an opportunity to acquire such knowledge; that, regardless of these questions, appellant had the right to employ an inexperienced and incompetent yard brakeman to act in the same line of service with him; that under these circumstances appellee was bound, on the one hand, to perform the act in which he was engaged when injured, without any reliance on the competency of those assigned to assist him; and, on the other hand, he must be held to have assumed all the risks growing out of the carelessness and negligence of such inexperienced and incompetent coemploye.

The risks assumed by the servant are such as are open alike to the knowledge and observation of both the master and the servant, and the rule has no application when the master and servant are not, in this respect, on an equality.

The Chicago, St. Louis and Pittsburgh Railroad Co. v. Champion.

Measured by this rule, we are of the opinion that the eleventh instruction does not fully and correctly state the law. It certainly ignores any knowledge or opportunity to acquire knowledge on the part of appellee as to the probability or necessity for placing him in a hazardous position with an inexperienced and incompetent fellow-servant.

If the instruction proceeded on the theory that appellee entered into the service in which he was engaged with knowledge, or that he continued in such service after he had an opportunity to learn that it was necessary, in the reasonable and careful operation of the road, to employ inexperienced and incompetent coemployes to assist him in the hazardous work in which he was engaged, a different question would be presented.

The petition for a rehearing is overruled.

Filed April 6, 1894.

## DISSENTING OPINION.

Ross, J.—I can not concur in the views of the majority of the court in saying that instruction number two, which the appellant requested to be given, "is too narrow—not sufficiently comprehensive—as applied to the evidence to which it is evidently directed."

It is so well settled that I hardly need cite authorities in support of the proposition, that an instruction, in order to be good, need not cover the entire case, but that if construed in conjunction with the other instructions given, it states the law correctly, it is sufficient. *Louisville, etc., R. W. Co.* v. *Grantham*, 104 Ind. 353; *Lehman* v. *Hawks*, 121 Ind. 541; *Conway* v. *Vizzard*, 122 Ind. 266.

And it is equally well settled that if a party desires special instruction upon any particular branch of the

case, it is his duty to prepare and submit to the court such instruction as he may desire given. *Burgett* v. *Burgett*, 43 Ind. 78; *Louisville, etc., R. W. Co.* v. *Grantham, supra; Conrad* v. *Kinzie*, 105 Ind. 281; *DuSouchet* v. *Dutcher*, 113 Ind. 249.

And if the instructions so tendered are applicable to the issues and the evidence in the cause, and are not covered by other instructions given by the court, it is error to refuse to give them, if, taken and construed in conjunction with the instructions given by the court, they state the law correctly.

The same rule applies in determining the sufficiency of an instruction asked and refused as obtains in determining the correctness of an instruction given.

Applying the rule to this instruction, we have the proposition plainly presented: Does it, when taken in connection with the instructions given, correctly state the law as applicable to the issues and evidence in this case? By the instructions given, the jury had already been told that where the master knowingly employs or knowingly keeps in his service an incompetent employe, he is liable to a coemploye for injuries resulting from the incompetency of such servant, and it was therefore unnecessary to incorporate that element in the instruction asked. Had the court given the instruction asked, and the appellee appeared here as the appellant, asking this court to reverse the judgment on account of the giving of this instruction, because "too narrow," the court would hold that the instruction, considered in connection with the other instructions given, states the law correctly.

The instruction, however, had another office to perform, which was the principal and, perhaps, the only one for which it was asked, and that was to instruct the jury that the law raises the presumption that the appellant had performed its duty in the employment of its serv-

ants; and that the appellee must overcome that presumption, by a preponderance of the evidence, before he was entitled to recover.

That the law raises such presumption, and that the burden was upon the appellee to overcome such presumption, by proving a duty and a breach thereof, are undisputed; hence, the appellant was entitled to have the jury so instructed. *Pennsylvania Co.* v. *Whitcomb, Admr.*, 111 Ind. 212; *Hard* v. *Vermont, etc., R. R. Co.*, 32 Vt. 473; *Gravelle* v. *Minneapolis, etc., R. W. Co.*, 10 Fed. Rep. 711; *McDermott* v. *Hannibal, etc., R. R. Co.*, 87 Mo. 285; *Davis* v. *Detroit, etc., R. R. Co.*, 20 Mich. 105; Wood Master and Servant, sections 346 and 419; 3 Wood Railway Law, section 376; McKinney Fellow-Servants, section 89, and cases cited.

"The presumption is, that the master has performed his duty. This presumption the employe must overcome, for it stands, until overthrown, as a *prima facie* case. It must, therefore, be held that the appellant discharged its duty, unless the contrary has been affirmatively shown." *Pennsylvania Co.* v. *Whitcomb, Admr.*, *supra*.

None of the instructions given by the court cover this branch of the case, unless, as the majority of the court hold, that a general instruction that the plaintiff must prove the material allegations of his complaint, is all that a party is entitled to ask, and inasmuch as the writer thinks this instruction was no more than the appellant was entitled to have given, and states the law correctly, and was applicable to the facts in this case, it was error to refuse it.

The refusal of the trial court to give the eleventh instruction asked by the appellant, presents a question of law of vital importance to the employer, as well as the employe. The question presented is, whether or not the

master, by the employment of men lacking in experience, becomes liable for injuries resulting to a coemploye through the want of skill of such inexperienced servants?

It is a fact that can not be successfully disputed, that, in the operation of railroads, as well as many other kinds of business, new and inexperienced men must, from necessity, be employed when men of experience can not be procured. And in almost every line of employment the employe must, at some time, be inexperienced.

Is the master guilty of negligence in making such employments? No more can a man ignorant of the construction or mechanism of a locomotive engine, or the means and manner of its operation, or of the running and management of any complicated piece of machinery, be expected to be able to construct and operate the one, or to run and manage the other, than that the mind of an infant, without training, culture and experience, should at once become that of a fully developed adult. There is, and must always be, a beginning to everything. And we know that man becomes proficient only from experience. From these premises, it naturally follows that every man, in adopting a calling, must at first be inexperienced. In the management and operation of large mills and factories, and in the running of railroads, where thousands upon thousands of men are employed, it is absolutely necessary to employ, at all times, more or less inexperienced employes. Such employes are not, however, put to work in places and to perform duties requiring great skill and experience, but are placed in such places, and to perform such duties, as require little or no skill, and where the inexperienced may learn and in time become experienced and skilled. One entering the service of another, knowing that he must, by experience, acquire knowledge and skill, must and does

assume the risks incident to such service; not alone those arising from his own inexperience, but also those arising from the inexperience of those engaged with him in the same service, and who are so placed with him for the purpose of acquiring knowledge and experience.

The instruction under consideration, it seems to me, meets every requirement of the law, for the court was simply asked to instruct the jury that if, "in the reasonable and careful operation" of its railroad, there was no way by which a careful and intelligent man could acquire the experience necessary to render him a competent yard brakeman, except by actual service in that capacity; and that in such operation of its railroad it was necessary for the appellant to employ in that service men who had had no former experience as yard brakemen, then the appellee, when he entered appellant's employ, assumed the risks incident to the employment, including those arising from the inexperience of his coemployes who were working with him and getting experience in the same manner as he was.

If it is negligence *per se* to employ an inexperienced employe, we need pursue this inquiry no further, but if not, then upon what hypothesis can the master be held liable.

As a general proposition, it is stated that the master owes it as a duty to the servant to furnish him reasonably safe machinery, tools and appliances with which, and a reasonably safe place where, to work. And it is also said that he owes it as a duty to one servant to exercise reasonable care to select coservants who are careful and competent. While proper as general statements of the law, their application is varied and limited, for they can not apply where the work to be performed is such that reasonably safe machinery, tools, and appliances can not be furnished, or the place where the work

is to be done, is necessarily an unsafe and dangerous place to work. But they are applicable where the master can furnish machinery, tools, and appliances of the kind which he uses in his business, which are reasonably perfect in their construction and make. The law does not attempt to impose upon him the duty of furnishing machinery, tools, and appliances, in the use of which, or a place where, in the performance of his duties, the servant can not be injured.

As McBride, J., in a very recent case, says: "The term 'safe place to work,' as thus used, is, of course, necessarily relative. It does not mean a place absolutely free from danger, as some vocations from their very nature, involve the constant encountering of danger." *Louisville, etc., R. W. Co.* v. *Hanning, Admr.*, 131 Ind. 528.

Neither does the law require the master to warrant that a servant will be careful and prudent in the performance of his duties, and not injure a fellow-servant. The most that is required of the master is that he shall use reasonable and proper care in the selection of his servants, selecting those only whom he believes to be competent to properly perform the duties required of them. The fact that an injury results to one servant from the carelessness of a fellow-servant, is not of itself sufficient to impute negligence on the part of the master, either in the selection of the servant whose negligence caused the injury, or in his retention. *Louisville, etc., R. R. Co.* v. *Allen's Admr.*, 78 Ala. 494, and cases cited; Wood Master and Serv., section 419, and cases cited in note 1.

The majority of the court confuse the term "inexperienced servant" with the term "incompetent servant." They are not synonymous terms. A servant may be inexperienced and yet not incompetent. The evidence in this case does not establish the fact that an inexperienced

person is incompetent to act in the capacity of, and to perform the duties required of, the servant complained of.

The duty imposed by the law is that a master shall be reasonably prudent in the selection of his servants, so that one servant may not be exposed to dangers other than such as naturally arise from the undertaking. If, in the reasonable and careful operation of a railroad, it is necessary to employ inexperienced persons to perform certain duties, and the company exercises reasonable care in the selection of such persons, it has done all that the law requires of it, and those entering such employment assume the risks of accident caused by the inexperience of such employes, for the reason that such risks are an incident of the service.

The instruction under consideration simply defines the risks thus assumed, and should have been given. To announce a different rule is to overthrow the well settled principle established not only in this State, but in every other State of the Union, except those States where there are special statutes, that a servant entering the employ of a master impliedly assumes all the risks naturally incident to the service.

For these reasons, I am compelled to dissent from the views expressed in the opinion of the majority of the court.

The judgment should be reversed, with instructions to grant appellant a new trial.

**Filed Jan. 10, 1894.**