NEILON V. THE KANSAS CITY, ST. JOSEPH & COUNCIL
BLUFFS RAILWAY COMPANY, *Appellant.*

1. **Negligence** : SERVANT, INCOMPETENCY OF.  Where a railroad has
knowledge of the unfitness and incompetency of a conductor in
charge of its train, and another servant, while engaged in the
proper discharge of his duties as brakeman, is precipitated between
two cars of the train and injured, by reason of such incompetency
of the conductor and his carelessness in having drawn the pin
coupling between said cars without notifying the brakeman, the
company is liable for such injury.  .

2. **Practice in Supreme Court**: ASSIGNMENT OF JUDGMENT : SUBSTI-
TUTION.  Where one in his lifetime assigns a judgment in his favor
and dies pending an appeal to the Supreme Court, the assignee will
be substituted as a party in his stead in the latter court.  R. S.,
sec. 3671.

*Appeal from Buchanan Circuit Court.*—HON. JOS. P.
GRUBB, Judge.

AFFIRMED.

The instructions given for plaintiff were as follows:
"1.  It was the duty of defendant to employ care-
ful, reliable, and competent servants to conduct and
manage its trains and cars, and if the jury believe from
the evidence that the defendant failed to exercise reason-
able care in the employment of such servant, or if de-
fendant failed to discharge any servant or employe that
it had good reason to believe was careless, unreliable and
incompetent, and injury resulted therefrom to plaintiff,
without a fault on his part, and while engaged in the
discharge of his duties as employe of defendant, then
defendant is liable for such injury."
"2.  If the jury believe from the evidence that
Alfred La Brunerie was not a fit person to act as con-
ductor of defendant's trains, and that after defendant

had notice of such unfitness it continued him in its employ as such conductor, and the plaintiff, while engaged in his duties as a brakeman on defendant's train, and while exercising reasonable care, was precipitated between two of the cars of said train by reason of the carelessness and unfitness of said La Brunerie, as conductor of said train in having drawn the pin coupling said cars without notifying plaintiff thereof, whereby plaintiff was injured, then the jury will find for plaintiff and assess his damages at such sum not exceeding twenty thousand dollars, as they believe from the whole evidence will compensate him for such injury."

"3. If the jury find for the plaintiff they should, in estimating his damages, take into consideration the age and situation of the plaintiff, his bodily suffering and mental anguish resulting from the injury received, and the loss sustained by want of the limb injured, and the extent to which he was disabled from making a support for himself by reason of the injury received."

"4. The jury are instructed that notice to the general superintendent of the railroad company is notice to the company."

The following instructions were given at defendant's request:

"3. Unless the jury believe from the evidence that the conductor in proof was habitually negligent in the discharge of his duties, and that defendant was guilty of negligence in employing him as conductor, or that the defendant negligently retained him after such carelessness or unfitness became obvious, then they will find for defendant."

"4. There is no evidence that defendant was guilty of negligence in employing said conductor."

"6. A single act of negligence does not establish incompetency or by itself have any tendency to do so."

"8. Unless the conductor in the discharge of his duties as a servant of defendant, owed as a duty, or was

required by his duty to defendant, to inform the plaintiff that he had cut off the cars, then the jury will find for the defendant."

"11. If the jury believe from the evidence that plaintiff, by his own negligence, directly contributed in any degree to the injury sued for, they will find for defendant."

"12. If the jury believe from the evidence that after the accident in proof at Savannah, the defendant, through its superintendent, investigated said accident and had before him all the persons connected with the train, and the result of said investigation was such that a man of ordinary prudence would not have discharged said conductor, then there is no negligence in defendant retaining said conductor in its employment after said accident."

"13. The court instructs the jury that there is no evidence in this case that the witness La Brunerie, when he was employed by the defendant as conductor, was not a skilful, careful, competent man, and it devolves upon the plaintiff to affirmatively show to the satisfaction of the jury the fact that he subsequently became habitually negligent, and that defendant was informed thereof, and unless he has done so, they will find for defendant."

*Strong & Mosman* for appellant.

(1) The appellant relies on the following points for a reversal of this cause. That plaintiff and La Brunerie were fellow servants will, we think, be conceded. Upon any other theory some of the allegations of the petition would be superfluous. Upon the facts stated the law would hold them fellow servants. *McGowan v. Ry. Co.*, 61 Mo. 528; *Price v. H. & St. Jo. Ry. Co.*, 77 Mo. 508. (2) The petition stated facts which affirmatively showed that the plaintiff had no cause of action in that it averred that the injury was occasioned by an act which did not

pertain to the duties of La Brunerie. *Osborne v. Ry.*,. 68 Me. 49 ; *Cousin v. Ry. Co.*, 66 Mo. 572 ; *Sherman v. Ry. Co.*, 72 Mo. 62 ; *Flower v. Ry. Co.*, 69 Pa. St. 210 ;. *Oxford v. Peler*, 28 Ill. 434 ;. *Eaton v. D., L. & W. Ry. Co.*, 13 Am. Law Reg. 665 ; *Snyder v. Ry. Co.*, 60 Mo. 413 ; *Harper v. Ry. Co.*, 44 Mo. 488. (3) It failed to· state facts sufficient to constitute an action based on the· failure of La Brunerie to notify plaintiff that he had pulled the pin. *Hayden v. Smithfield Co.*, 29 Conn. 548 ; *Buffalo v. Holloway*, 7 N. Y. 498 ; *Field v. Ry.. Co.*, 76 Mo. 614. (4) There is a total failure of proof. (*a*) There is no evidence from which the jury could. rationally find that La Brunerie was guilty of any neg- ligence on the occasion of the injury. *Brown v. Con- gress, etc., Ry. Co.*, 8 Am. & Eng. Ry. Cases, 383 ;. *Wyatt Case*, 55 Mo. 488 ; *Brown v. H. & St. Jo. Ry. Co.*, 50 Mo. 467 ; *Railroad Co. v. Jones*, 95 U. S. 439 ; *Smith v. H. & St. Jo. Ry. Co.*, 37 Mo. 292 ; *Mo. Pac. Ry. Co.. v. Haley*, 25 Kas. 35. (*b*) The evidence showed that the· alleged negligence causing the injury was of such a character that neither plaintiff nor defendant could by any possibility have any notice or knowledge thereof ;. one as to which defendant could not be charged with negligence. Both being alike ignorant, there could be no recovery. *Hasken v. N. Y. Central Ry. Co.*, 65 Barb. 129. (*c*) It was shown to be a danger which a master could not be said to have subjected his servant to ; a danger the master could not foresee, or by any possi- bility guard his servant against, and which it was only possible to the servant alone to protect himself from. The master not being in fault, the servant could not re- cover. *Gibson Case*, 46 Mo. 169 ; *Mo. Pacific Ry. Co. v. Haley's Adm'r*, 25 Kas. 57 ; *Davis v. Ry. Co.*, 20 Mich. 105 ; *Ind., etc., v. Love*, 10 Ind. 556 ; *Pittsburg Co. v. Sentmeyer*, 92 Pa. St. 276 ; *Harper v. Ry. Co.*, 47 Mo. 577 ; *Elliott v. Ry. Co.*, 67 Mo. 272 ; *Matthew v. Elevator Co.*, 59 Mo. 474 ; *Wright v. Centr. Co.*, 25 N.

Y. 571-2. (5) There was a total failure of evidence that La Brunerie was careless, unreliable, and incompetent to discharge the duties of a conductor. *Baulec v. N. Y. & Harlem Ry. Co.*, 5 Lansing 436 ; *C., C. & I. C. Ry. Co. v. Troesch*, 57 Ill. 155 ; *Baulec Case*, 59 N. Y. 363 ; *Lee v. Detroit Co.*, 62 Mo. 568. (6) There was no proof, whatever, that the defendant had any notice or knowledge that La Brunerie was careless, unreliable, or incompetent. *Baulec Case*, 5 Lansing 440 ; *Warner v. Erie Ry. Co.*, 39 N. Y. 468 ; *C., C. & I. C. v. Troesch*, 57 Ill. 155 ; *Baulec v. N. Y. & Harlem Co.*, 59 N. Y. (356) 363-4 ; *Davis v. Mich. Ry Co.*, 20 Mich. 105. (7) Conceding that La Brunerie was guilty at Savannah of the acts of negligence charged by Thomas Kane, it affirmatively appears that negligence of the character thus charged and shown had no relation to or connection with the act causing the injury here. *Powell v. Mo. Pac. Ry. Co.*, 76 Mo. 80 ; *Harlan v. Ry. Co.*, 65 Mo. 22 ; *C., C. & I. C. Ry. Co. v. Troesch*, 57 Ill. 155 ; *Wright v. Central Ry. Co.*, 25 N. Y. 571-2. (8) The court erred in giving and refusing instructions. *Yarnall v. Ry. Co.*, 75 Mo. 575 ; *Goodwin v. Ry. Co.*, 75 Mo. 73 ; *Bell v. Han. & St. Jo. Ry. Co.*, 72 Mo. 50.

*Woodson & Crosby* and *B. R. Vineyard* for respondent.

(1) "If the defendant was negligent or unmindful of its duty in employing competent and skilful servants in the execution of its business and injury resulted therefrom, it must be held responsible. And of the sufficiency of the proof to sustain this fact, the jury were the proper judges." *Harper v. Railroad*, 47 Mo. 579 ; *Harper v. Railroad*, 44 Mo. 490. (2) This suit, a judgment having been rendered in the lifetime of the plaintiff, does not abate by reason of his death. *Lewis v. Railroad*, 59 Mo. 503. And those to whom the judgment

was assigned by the original plaintiff, in his lifetime, are the proper ones to be substituted as parties plaintiff in the Supreme Court. R. S., sec. 3671. (3) The defendant is liable in this case for the reason that the conductor was not only shown to have been negligent and unfit for the place he held, but the defendant was shown to have been guilty of negligence in placing him in charge of the train when, from an investigation had a short time before, he was found, by the defendant itself, to be unfit for the position of conductor, and was suspended for two weeks on account of such unfitness. The railroad company may be held responsible for the negligence of an unfit servant, whenever that unfitness is shown to exist for such time and under such circumstances that the managing officers of the company ought to have known of it, or where a specific act has shown such unfitness, and knowledge of that act has been brought to such officers. *Ill. Cent. Railroad v. Jewell*, 46 Ill. 101; *The Tex. Mex. Ry. Co. v. Whitmore*, 11 Am. & Eng. Railroad Cases, 195, September, 1883, number; *Ry. Co. v. Doyle*, 18 Kas. 65-66; *The P. & Ft. W. & C. Ry. Co. v. Ruby*, 38 Ind. 318; *Wabash Ry. Co. v. McDaniels* (U. S. Sup. Ct.) 11 Am. & Eng. Ry. Cases, 158, September, 1883, number; Wharton on Negligence, sec. 238.

RAY, J.—This action was begun, and trial had, in the circuit court of Buchanan county, Missouri. The plaintiff, Michael Neilon, was a brakeman employed by the defendant, and at the time of receiving the injuries sued for, was acting as head brakeman on one of defendant's freight trains, which was then in charge of a conductor named La Brunerie. Neilon had been acting as such brakeman on La Brunerie's train for two weeks, during which time he had made four round trips between Hopkins and St. Joseph. Before, or about the time of the arrival of the train in question, at Amazonia, said conductor notified plaintiff that two cars were to be set

out of the train at said station, and told plaintiff to pull the pin and cut off the cars. It seems that the train pulled off a branch line at said station, and was backing up on the main line to set out the cars, when the accident occurred. The manner in which it happened, and the grounds of liability therefor, are set out in the petition substantially as follows:

" That while said train was backing to detach and leave part of its cars, one Alfred La Brunerie, who was conductor of said train, and had charge and control thereof and of defendant's employes at work thereon, carelessly, and without notifying plaintiff, pulled the pin from the coupling between the rest of the train and the cars to be detached, although it was no part of his duty to pull said pin, and the plaintiff, while walking along the top of said train, in the discharge of his duties as brakeman thereof, and about stepping across the coupling from which said pin had been removed without his knowledge, at the slowing of the engine was, by reason of said removal of said pin, and the consequent (but unexpected, to him) parting of said train, precipitated upon the track, run over, and injured as aforesaid; that said La Brunerie was careless, unreliable, and incompetent to discharge the duties of conductor, as defendant well knew before, and at the time of placing him in charge of said train, and that defendant, well knowing him to be thus careless, unreliable and incompetent, had wilfully and negligently retained and continued him in its employ, and placed him in charge of said train as aforesaid."

Defendant's answer was a general denial, except as to its incorporation and plaintiff's employment and service as its brakeman, and set up further contributory negligence on part of plaintiff, which was denied generally in the reply of plaintiff. Under our view and disposition of the case, it is not necessary, we think, to set out the evidence in the cause. It will be noticed, and

some portions thereof quoted, in the progress of the opinion. Under the evidence and the instructions, which will also be considered hereafter, plaintiff obtained a verdict and had judgment thereon, from which defendant has taken this appeal to this court.

An objection is made, in the first instance, to the sufficiency of the petition. It contained an allegation to the effect, it will be observed, "that it was no part of the conductor's duty to pull the pin," and it is contended for appellant that under said allegation, as said act did not pertain to the duties of his employment as conductor, no cause of action was stated against the defendant. For the respondent, it is contended that when considered in connection with the other allegations in the petition, as well as with the balance of the allegation of which it forms a parenthetical clause, or subordinate part, it does not charge that it was no part of his duty as conductor to pull a pin under proper circumstances, but that it simply avers that it was no part of his duty at that time and under those circumstances to pull the pin without notifying the plaintiff. We do not think it very important or material which, if either, of these views may be correct. It was not the act of pulling the pin that caused the plaintiff's injury. This is conceded. It was the failure to notify plaintiff of said act that was the procuring cause of the injury, and it is not admitted or averred in the petition that this was no part of the conductor's duty nor within the scope of his employment. On the other hand, the petition further alleged that said conductor carelessly and without notifying plaintiff, pulled the pin, whereby the train unexpectedly parted, and thereby he was precipitated upon the track, run over and injured. It charges, also, as we have seen, that said conductor was incompetent and unreliable, and that defendant employed and wilfully and negligently retained him in its employ as conductor, well knowing that he was careless, unreliable, and incompetent. These

allegations state a cause of action and the petition is, we think, sufficient. *The P., Ft. W. & C. Ry. Co. v. Ruby,* 38 Ind. 311; *Ill. Cent. Ry. Co. v. Jewell,* 46 Ill. 101; *Harper v. I. & St. L. Ry. Co.,* 47 Mo. 579; *Harper v. Ind. & St. L. Ry. Co.,* 44 Mo. 490-91.

It is charged in the petition that defendant well knew before and at the time of placing La Brunerie in charge of the train that he was incompetent, but there was no evidence to sustain said averment and that question was taken from the jury by appropriate instructions. The substantial controversy in the case is as to the character of La Brunerie's act, whether he was negligent or otherwise in pulling the pin and failing to notify plaintiff, and as to the incompetency of said conductor and his retention by the defendant, with notice and knowledge thereof. As to the misconduct of La Brunerie upon this occasion we think little need be said. He was the officer and servant in entire control of the train, and men employed thereon. His act was not that of a volunteer. While it was not his duty, usually, to uncouple the cars, he might rightfully and lawfully do so. Mr. Barnard, in his testimony, says: "Ordinarily, brakemen ought to couple and uncouple cars; when order is given to head brakeman it is his duty to uncouple cars; don't think conductors ever uncouple cars after ordering brakemen to do so." In this instance, however, La Brunerie gave Neilon, who was the head brakeman, the order to uncouple and set out the cars, and proceeded, almost immediately and directly, to pull the pin, and then failed to notify plaintiff. This was negligence and carelessness, to say the least, and on this occasion, as upon another to which we shall refer again, directly, "he did not seem to have (as the superintendent then said), a clear understanding of his duties in giving his orders to his men." It is plain, we think, that there was evidence in the case sufficient to authorize and require the trial court to submit to the jury the issue whether

said conductor was incompetent, and whether defendant had retained him as such, with notice and knowledge thereof.

A brief statement of portions of the evidence material and pertinent to this part of the inquiry will be sufficient. La Brunerie's experience as a freight train conductor consisted of his service as such for the six weeks next preceding the accident, during two of which, as we shall shortly see, he was suspended. The plaintiff, it will be remembered, was injured October 8, 1877. Prior thereto and to plaintiff's service with him, and about the last of August or first of September, another accident had happened to La Brunerie's train at Savannah, whereby the defendant's property, engine and cars had been injured. Within a day or two thereafter, General Superintendent Barnard instituted and conducted an examination into the causes of said accident, having La Brunerie and others to appear personally before him. The witness Kane, who was then a brakeman on La Brunerie's train, testifies that he then "told Mr. Barnard that La Brunerie was not capable of running a train; that he was in the habit of drinking and sleeping on duty." It is proper to say that Mr. Barnard had no recollection of such statement being made to him. La Brunerie, in his account of said accident, at that time sought, it seems, to cast the blame therefor on the brakeman, Kane, but when called as a witness, and put under oath, he stated upon this trial that he was to blame for the accident at Savannah, and that he was drunk and asleep. As a result of said investigation by the superintendent, Kane was discharged and La Brunerie suspended, or "laid off," for two weeks. Mr. Barnard testified that he suspended La Brunerie because he thought La Brunerie should have known what his brakemen were doing, and should have been on the front end of his train, and "because he did not seem to have a

clear understanding of his duty in giving orders to his men." Mr. Barnard further testified that he finally discharged LaBrunerie for being asleep on duty, some time afterward. D. H. Winston, assistant superintendent of defendant, testified, among other things, that during this suspension La Brunerie applied to him for a letter of recommendation, so that he could get work elsewhere, and that he refused to give the letter because of the suspension.

Competent men, it is true, may be, and are sometimes, forgetful or negligent, and, it may be conceded, as claimed by appellant, that a single act of negligence does not prove, or, by itself, even tend to prove incapacity; yet, under the evidence, this hardly meets the requirements of the present case. The conclusion arrived at by Barnard, the superintendent, after investigating the cause of said former accident, and after a personal examination of La Brunerie himself, as to his conduct at that time, involves, we think, something more than a mere omission on his part on that occasion. If, as stated by Barnard, La Brunerie "did not seem to have a clear understanding of his duty in giving orders to his men," it would seem to imply such want of capacity and intelligence as to disqualify him for the safe discharge of the important and hazardous duties of his position as conductor. There was, however, opposing evidence in other statements of said witnesses and from other witnesses, on behalf of defendant, making such a conflict of testimony as justified the submission of the same to the jury for their determination, as before stated.

Instructions, four in number, were given for plaintiff, and seven for the defendant, presenting the issues, we think, with unusual clearness and precision, and fairly, and, perhaps, even favorably, to the defendant. A num-

ber were refused for the defendant, but the whole case was covered by those given, and we perceive no error in the court's action thereon and no prejudice to the defendant in this behalf. Other questions are suggested in the briefs of counsel, and numerous authorities cited, but from the view we have taken of the case we deem them not material to the proper disposition of the case, and no further notice need be taken of them.

Michael Neilon, the original plaintiff in this cause, having died after the cause was appealed to this court, and the case having been duly revived in the name of ───── Smith, as the legal representative or administrator of said deceased, and it appearing to the court by stipulation of parties, on file in this court, among other things, that said Michael Neilon, in his lifetime, on the record, when the judgment in this cause was entered, assigned said judgment to Silas Woodson and Benjamin R. Vineyard, they, the said Woodson and Vineyard, on their motion, are, by the order of this court, hereby substituted as such assignees as parties plaintiffs in this action, under and by virtue of section 3671 of the Revised Statutes of 1879.

For the reasons hereinbefore stated, the judgment of the circuit court is affirmed. All the judges concur.