## THE CONSOLIDATED COAL COMPANY OF ST. LOUIS

*v.*

## FRANK SENIGER.

*Opinion filed April 17, 1899.*

1. TRIAL—*more than ordinary freedom is allowable in examining hostile witness.* Where a witness whose negligence is charged as the main cause of plaintiff's injury is confronted, on re-direct examination, with a paper signed by him the day after the injury, containing a statement at variance with his testimony on cross-examination, and he denies recollection of such statement, insisting that his testimony is true, it is proper to permit counsel to examine him, with a view to getting his judgment whether his recollection was not better at the time of signing the paper than when testifying.

2. EVIDENCE—*incompetency of servant may be shown otherwise than by general reputation.* A servant is incompetent who is wanting in the qualifications required for the performance of his duties, whether through lack of knowledge or capacity, imprudence, indolence or habitual carelessness, and evidence tending to show that he habitually performed his work in a manner dangerous to the safety of other servants is admissible on the question of his incompetency.

3. SAME—*certificate of mine examiners as to competency of engineer is not conclusive.* The fact that the law prohibits a mine owner from employing a hoisting engineer not having a certificate of competency from the State Board of Mine Examiners does not make such certificate conclusive of the competency of an engineer, so as to debar a miner injured by his negligence from showing that he was incompetent and that the employer had notice, either actual or constructive, of that fact.

4. SAME—*when lease of mine is shown to be merely a form.* An alleged lease of a mine is properly held to be merely a form to enable the owner to operate the mine in the name of the lessee, where it appears there was an outside verbal arrangement carried out by the parties, under which the lessor retained his former superintendent, had supplies shipped in his own name, prepared all bills of lading, shipped the coal, paid freight on coal and supplies, and settled the lessee's pay roll each month, allowing him a certain salary.

*Consolidated Coal Co.* v. *Seniger,* 79 Ill. App. 456, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Macoupin county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

Charles W. Thomas, (Frank W. Burton, of counsel,) for appellant.

Zink, Jett & Kinder, for appellee.

Mr. Justice Cartwright delivered the opinion of the court:

The Appellate Court affirmed the judgment of the circuit court in favor of appellee, against appellant, thereby settling all controverted questions of fact in favor of appellee, and the judgment of the Appellate Court is now under review for the purpose of determining whether its conclusions were correct upon the errors of law assigned.

The suit is for damages on account of injuries received by plaintiff while employed in defendant's coal mine at Staunton, Illinois. On the morning of May 14, 1897, the plaintiff, with seven others, got into the cage at the top of the shaft, which is three hundred and five feet deep, to be lowered into the mine. After the cage had descended half way, as it passed the other cage, which was ascending, it began to run down very rapidly, and after being checked for an instant it continued downward at great speed to the bottom of the shaft, injuring the plaintiff. The first count of the declaration charged that the injury was occasioned by defendant's failure to provide a sufficient brake on the drum to hold the cage in case the machinery gave out. The second charged that it was negligent in the employment of an incompetent, inexperienced and intemperate engineer, who was placed in charge of the engine. The third charged generally that the machinery used for lowering its employees into the mine was unsafe. The plea was the general issue.

Jefferson D. Rasor was the engineer of the engine, and he was called and testified for the plaintiff. He had signed a statement of facts made out by the mine inspector as given by him on the morning after the injury, and in his examination he said that the paper was read to

him and he signed it. In the course of his cross-examination he said that while he was letting the men down somebody came in and walked up behind him, distracting his attention from the engine. On the re-direct examination his attention was called to the statement signed by him, and he was asked if he did not therein state that there was no one in the engine room to take his attention from the engine. He said that he did not remember that the statement was contained in the paper signed, but he refused to look at it, and persisted in his statement that his attention was distracted at the time. Counsel for plaintiff stating that he was surprised at the testimony, the court permitted him, against objection, to examine the witness with a view to refreshing his recollection and to get his judgment whether his recollection was not better at the time of making the statement the next day after the accident. The action of the court in permitting this examination is complained of, but we see no error in it. The witness developed a refractory disposition, and refused to answer until the court threatened to put him in jail. His conduct and manner justified the court in permitting the direct examination. He was naturally a hostile witness, the principal grounds of the action being that he was incompetent and unfit for the position of engineer, and under such circumstances a party may be permitted more than ordinary freedom in the examination.

The mine was ostensibly operated by F. E. Weissenborn under a lease from defendant. It appeared that the men had told Hebenstreit, defendant's superintendent, that they were not willing to work under Weissenborn as lessee, and gave as a reason that he was not responsible if the men should get hurt. One error assigned is, that the court did not exclude from the jury the testimony of Joseph Bowman, one of the miners, that Hebenstreit said, in reply, the defendant would be responsible for such injuries. This testimony was given by Bowman on his cross-examination by defendant's counsel in answer

to questions put to him, and the abstract shows no objection to the answer at the time and no motion to exclude it. After all the evidence was in, defendant made a motion to strike it out, which was overruled. We think the ruling was right. Aside from the fact that defendant called out the statement, it was not in the nature of a promise that defendant would answer for the default of Weissenborn, but rather that the superintendent understood the relations to be such that defendant would be liable in such a case. It tended to show the true relations between the parties.

Various witnesses were asked by plaintiff's counsel as to what the manner of the engineer was in handling the cage or letting men down or bringing them up from the mine, and answers were given, against objection of defendant, showing that he frequently ran the machinery so fast that it was impossible to properly control the cage by a brake; that sometimes he would let the cage almost drop, and sometimes seemed to catch it before it reached the bottom and then let it go bumping to the bottom; that sometimes he would run it up swiftly above the landing; that sometimes the men could hardly stand on the cage, and stood on tiptoe to lessen the shock and internal jar; that the cage would strike the bottom of the shaft very hard, so that the bread would jump out of their pails, and that sometimes, in landing the cage at the bottom, the men would be thrown off or knocked off. It is objected that the court erred in permitting this testimony to go to the jury. If we understand counsel, the claim is, first, that the incompetency of the engineer could only be shown by a general bad reputation for incompetency; and secondly, that the fact of incompetency could not be proved by his conduct, because it contradicted his certificate of competency given him by the State Board of Mine Examiners. We do not think the evidence incompetent on either ground. It is true that a competent engineer may be negligent on a particular oc-

casion and not be above the ordinary frailties of human nature, and that incompetency is not shown by some particular act of negligence; and yet, one who knows how to run and handle an engine properly, and who has the physical strength to do so, cannot be said to be competent for the position·of engineer if he is habitually imprudent, careless and reckless. One is incompetent who is wanting in the requisite qualifications for the business entrusted to him. Rasor was incompetent for the business of engineer if he was wanting in the qualifications required for the performance of the service, whether arising out of a lack of knowledge or capacity, or through imprudence, indolence or habitual carelessness, and evidence which tended to bring before the jury his particular qualities in that respect, and to show his fitness or unfitness for the position of engineer, was competent. The occurrences were sufficiently frequent to answer such a requirement, and they were connected with other evidence tending to show that defendant had knowledge of his actions and the manner in which he handled the cage and the men. *Western Stone Co.* v. *Whalen,* 151 Ill. 472.

As to the other objection, it seems defendant was prohibited by law from employing a hoisting engineer who did not have a certificate obtained from the State Board of Mine Examiners, and Rasor had such a certificate. It is argued that by this statute the law has provided the only means by which a hoisting engineer's abilities can be ascertained, and that the efficacy of the certificate for that purpose cannot be disputed. While the law required defendant to select its engineer from a certain class, it did not make it obligatory upon it to employ Rasor or to retain him in its employment. It would not have been a violation of any law to have discharged him if he was found to be incompetent. If defendant had been compelled to employ him, there would, of course, be no element of negligence on its part in doing so, and it could not be held liable for a violation of the law on account

of his unfitness. Such a certificate does not conclusively establish the competency of the person, but may be considered with other evidence upon that question. The State Board of Mine Examiners had no power to adjudicate upon the question so as to bind the defendant or its men, and plaintiff was not debarred from proving that Rasor was in fact incompetent and unfit and that defendant had notice of it. The court gave to the jury the following instruction as their guide upon the subject:

"The court instructs the jury that the certificate of competency held by Rasor at the time he was placed in charge of the engine is *prima facie* proof that he was an experienced and competent engineer at the time he was placed in charge of the engine and also at the time of the injury, and is a sufficient justification, both in law and in fact, for placing him in charge of said engine, and unless you believe, from a preponderance of the evidence, that he was in fact incompetent or inexperienced, and that the defendant actually knew of such incompetency or inexperience before the injury, such certificate is a sufficient justification, both in law and in fact, for keeping him in charge of said engine."

This instruction stated the law as favorably to defendant as it could reasonably ask.

The defendant moved the court to exclude all the testimony and to instruct the jury to find it not guilty. It is claimed that this instruction ought to have been given because the evidence showed that the mine was operated by Weissenborn as lessee, and was not in the possession or under the management of defendant. It appeared that a lease was made from defendant to Weissenborn, but it also appeared that there was an outside verbal arrangement carried out by the parties, under which defendant paid Weissenborn what it cost to mine the coal and about $100 additional every month. Weissenborn prepared the pay-roll and it was paid by defendant. Weissenborn testified: "On the second Saturday of the month enough

money comes from St. Louis to Hebenstreit in a package for me to pay that pay-roll and approximately $100 for my salary." Hebenstreit, defendant's superintendent, remained the superintendent of the mine. All tools, machinery, oil and merchandise shipped to the mine were shipped to defendant, and defendant prepared all bills of lading and shipped all coal and paid all the freight on coal or supplies shipped to or from the mine. All conferences between the miners and those representing the mine were with Hebenstreit, the superintendent, or Simpson, the general manager of defendant. The evidence showed very satisfactorily that the lease was nothing but a form adopted by defendant to carry on its business in the name of Weissenborn, and that it still had full control and charge of the mine and the work therein. It is further claimed that the instruction should have been given because there was no evidence tending to prove the charges of negligence. The engine was examined, and also the brake, after the accident, but nothing was found to be out of order. The evidence, however, tends to show that it was not safe to drop a cage more than six hundred feet in a minute, and that it should have occupied at least thirty seconds to make the descent in this shaft; that Rasor habitually dropped it in eight or nine seconds, and that the rate of speed was such that a brake in good order would not operate. We think there was sufficient evidence of the incompetency of the engineer to justify the denial of the motion and the submission to the jury.

It is complained that the court refused to give an instruction that the certificate of the State board was conclusive evidence of the competency of the engineer. We have already expressed our opinion upon that subject. The instructions were fair and liberal to the defendant, and we find no error prejudicial to it.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*