### Staunton Coal Company v. William Bub.

1. MASTER—*duty of, with respect to employment of competent
servants.* The obligation and requirement of due care and caution
on the part of the master, does not cease with the employment of a
servant, but continues throughout the service. The master is at
all times bound to exercise reasonable care in the management and
supervision of his business to see that the servants are reasonably
competent for the particular duties to which they are assigned, and
he may be held liable if injury results from negligence or lack of
ordinary care in this respect. As in the employment of the servant
in the first instance, the master is held liable to a degree of care

commensurate with the risks and hazards to which other and fellow-servants may be exposed by the incompetency or unfitness of the particular servant employed, so the degree of care required in the management of his business and the supervision of all the servants is to be measured by like considerations.

Action on the case for personal injuries. Appeal from the Circuit court of Madison County; the Hon. CHARLES T. MOORE, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

PERCY WARNER, for appellant; TRAVOUS, WARNOCK & BURROUGHS, of counsel.

BURTON & WHEELER and JETT & KINDER, for appellee.

MR. JUSTICE MYERS delivered the opinion of the court.

This is an action of trespass on the case to recover for personal injuries sustained by plaintiff while working in one of the shafts of the defendant's mine. The declaration originally contained five counts, but at the trial the court took from the jury all the counts except the fourth. The fourth count after charging that defendant owned and operated a coal mine at Staunton, and that plaintiff was employed as an assistant cager at the bottom of the shaft, further alleged, that the cage was operated by steam power and was raised and lowered in the shaft by means of an engine; that it was the duty of defendant not to place in charge of said engine any other than a competent engineer, and one who would not hoist the said cage from the bottom until he had received the signal so to do, as provided by law. Then follows the charge that defendant, not regarding its said duty, failed and neglected said duty and placed and kept in charge of said engine an engineer who was not competent, and who did not regard the said signals, and who habitually disregarded the same, and hoisted the said cage without any signal so to do, and had been in the habit of so doing, to the knowledge of defendant, and which was unknown to the plaintiff. It is then alleged that on the 14th of January, 1903, while plaintiff was with due care and caution performing his duties as assistant cager, the

said engineer, "on account of his said incompetency, and on account of his disregard of the signals provided by law, without any signal being given, and without notice to the plaintiff that he was about to do so, suddenly started to hoist said cage in the shaft; that plaintiff was thereby thrown against the side of the shaft and was severely injured and compelled to expend certain sums in being healed, and that he was damaged in the sum of $5,000, for which he asked judgment. The jury rendered a verdict under this count in favor of plaintiff for $3,200. Motion by defendant for new trial was overruled and judgment entered on the verdict, from which the defendant appealed.

Appellee was assistant cager at the bottom of the shaft, operated by appellant. Edward Bayliss was cager on his side; on the opposite side Savidge was cager. On the day the injuries were received, Savidge and his assistant were attempting to place a box of coal on the cage; it left the track or was derailed at the point where the track on the bottom met the points of the rails on the cage. Bayliss and appellee went to the assistance of Savidge and his assistant, in the effort to replace the car on the rails. In so doing they stood on the cage near the side or end in a stooping posture with their backs to the car attempting to lift the same. While in this position and so engaged the engineer hoisted the cage by which Bayliss was thrown off and killed and appellee was carried up and injured by being dragged against the side of the shaft.

A large part of appellant's argument is devoted to a discussion of the evidence and its bearing on the issues which were tried by the jury. It is contended that the court erred in refusing to instruct the jury to find the defendant not guilty. This contention may not avail if there is any evidence in the record tending to prove all the material allegations of the declaration. This proposition has been so frequently announced by the higher courts, and is so generally understood that authority need not be cited. The appellant's statement of the issues under the pleadings is substantially correct. To sustain his cause of action it

was incumbent on the plaintiff to prove that King, the engineer, was incompetent; that the defendant knew of such incompetency or by the exercise of reasonable care should have known it; and that plaintiff was injured by the negligent act of King as alleged in the declaration. There is no dispute that the untimely hoisting of the cage by King, the engineer, caused the appellee's injury. All the men at the bottom of the shaft, the only persons by whom a signal to raise the cage could properly be given, testify that no signal was given. Savidge, a cager, who had been in the service of appellant a year and a half, during which time King was hoisting engineer, testifies that the hoisting of the cage without signal was of frequent occurrence, "lots of times," as the witness puts it. Page, a driver in the mine, testifies that he observed the hoisting of the cage without signal two or three times. Kniemoeller, a bottom cager for a month about two years prior to the injury, while King was at the engine, testified to a "few times" in which the cage was hoisted without signal. Vanderbery, another witness, at one time a cager in the mine, knew of King's hoisting the cage twice without any signal. To the same effect was the testimony of Allen and Reinor and Mahoda. All this testimony was competent and relevant under the allegation of King's incompetency. In this connection we quote from the opinion of the Supreme Court in Consolidated Coal Co. v. Seniger, 179 Ill. 370, a case analogous in the facts, and in point upon most of the legal propositions involved in this case: "It is true that a competent engineer may be negligent on a particular occasion and not be above the ordinary frailties of human nature, and that incompetency is not shown by some particular act of negligence; and yet one who knows how to run and handle an engine properly, and who had the physical strength to do so, cannot be said to be competent for the position of engineer if he is habitually imprudent, careless and reckless. One is incompetent who is wanting in the requisite qualifications for the business intrusted to him. Rasor (in this case, King) was incompetent for the business of engineer if he

was wanting in the qualifications required for the performance of the service, whether arising out of a lack of knowledge or capacity, or through imprudence, indolence or habitual carelessness, and evidence which tended to bring before the jury his particular qualities in that respect, and to show his fitness or unfitness for the position of engineer, was competent. The occurrences were sufficiently frequent to answer such a requirement and they were connected with other evidence tending to show that the defendant had knowledge of his actions and the manner in which he handled the cage and the men." Western Stone Co. v. Whalen, 151 Ill. 472, is cited. The evidence of Allen and Vanderberg tends to prove actual notice to appellant of particular acts of King which as already stated were properly admitted as evidence of his incompetency. Aside from this it was a question for the jury to decide, under all the circumstances proved, whether the defendant in the exercise of due care and supervision of its servants ought to have known the quality and fitness of the engineer. In Western Stone Co. v. Whalen, *supra,* it is said: "It may be confidently asserted that the great weight of authority, and according to the best considered cases, ordinary care in the employment of servants requires a degree of diligence and caution proportionate to the exigencies of the particular service. It is such care as a reasonably prudent person would exercise, in view of the consequences that might reasonably be expected to result if an incompetent, careless or reckless servant was employed for the particular duty. Where, therefore, a master employs a servant, to engage in a business known to be hazardous, and where the proper and safe discharge of the duty requires a high degree of care, skill and diligence, the master will be held in the selection of the servant to the exercise of care reasonably commensurate with the perils and hazards likely to be encountered in the performance of the duty." The foregoing is a statement of the duty of the master in the employment of servants and the degree of care and diligence required in their selection. The obligation and requirement of due care and caution on

the part of the master does not cease with the employment of the servant, but continues throughout the service. The master is at all times bound to exercise reasonable care in the management and supervision of his business to see that his servants are reasonably competent for the particular duties to which they are assigned, and he may be held liable if injury results from negligence or lack of ordinary care in this respect. As in the employment of the servant in the first instance, the master is held liable to a degree of care commensurate with the risks and hazards to which other and fellow-servants may be exposed by the incompetency or unfitness of the particular servant employed, so the degree of care required in management of his business and supervision of all the servants is to be measured by like considerations. The employees in and about appellant's mine were in constant danger of serious injury or loss of life unless the hoisting engineer was reasonably competent for that most important and exacting position. There was conflict and contrariety in the evidence sufficient upon which to base a plausible argument in favor of either party and on such a record the verdict of the jury is conclusive upon all questions of fact, unless there was error in the proceedings by which the verdict was obtained.

Complaint is made of the rulings of the court in the admission and exclusion of evidence and in the refusal of instructions asked by appellant. Many of the questions put by defendant were properly ruled out and some were proper and should have been permitted, but on the whole we find no substantial error, that is such error as was calculated to influence the jury to the prejudice of appellant. Without entering into a discussion of errors assigned upon refusal of instructions, we are of opinion, upon consideration and review of the whole record, that there is no prejudicial error to warrant a reversal of the judgment. It will therefore be affirmed.

*Affirmed.*