### Gertrude Smith, Administratrix, Appellee, v. Chicago, Peoria & St. Louis Railway Company of Illinois, Appellant.

1. MASTER AND SERVANT—*what tends to establish incompetency.* While a single act or omission does not necessarily establish incompetency as a matter of law, such act or omission may tend so strongly to prove a person to be careless, imprudent and unfitted for a particular position, as to, of itself, warrant the submission of the question of his incompetency to a jury for determination as a matter of fact.

2. MASTER AND SERVANT—*duty of railroad to ascertain fitness of conductor.* It is the duty of a railroad company when employing a person as conductor to exercise a degree of care commensurate with the responsibilities and exigencies of the service required of one filling that position in order that it may ascertain whether he is sufficiently qualified and competent. If such company is not assured by previous like service of such fitness it is its duty to institute affirmative inquiry to that end.

3. VERDICT—*when not excessive.* A verdict for $10,000 rendered in an action for death caused by alleged wrongful act is not excessive where it appears that the deceased at the time of his death was of the age of thirty-eight years, in good health, earning from $125 to $130 per month, and left him surviving a widow and a child of the age of seven years.

Smith v. C., P. & St. L. Ry. Co., 143 App. 128.

Action in case for death caused by alleged wrongful act. Appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding. Heard in this court at the November term, 1907. Affirmed. Opinion filed April 21, 1908.

WILSON, WARREN & CHILD, for appellant.

A. SALZENSTEIN and T. J. CONDON, for appellee.

MR. JUSTICE PUTERBAUGH delivered the opinion of the court.

This is an action in case by appellee, as administratrix of the estate of her deceased husband, George Smith, against appellant for the recovery of damages occasioned by the death of her intestate, which it is alleged was caused by the negligence of the appellant. The jury returned a verdict finding the defendant guilty and assessing the plaintiff's damages at $10,000. Judgment was rendered upon the verdict and the defendant appeals.

The declaration charges the ownership and operation by the defendant of a certain railroad; the duty to use reasonable care and diligence in selecting and employing reasonably intelligent servants to operate its trains and locomotives; that on October 4, 1905, the defendant placed in charge of one of its work trains and the engine thereof, an incompetent, inexperienced and unqualified engineer and an inexperienced and incompetent conductor, neither of whom had any previous experience in either of such capacities in the operating and handling of trains, which fact was well known to the defendant; that by reason of said negligent and wrongful act said conductor and engineer, while in charge of said engine and train, so negligently operated and ran the same that it collided with an engine attached to a regular freight train on the defendant's road, which engine was being operated by plaintiff's intestate, as one of the employes of the defendant, and who had no knowledge that the defendant had placed said incompetent engineer and conductor in

charge of said work train; that as a result of said collision, plaintiff's intestate sustained such injuries that his death ensued upon the same day.

The evidence shows that on October 4, 1905, one Cuthbertson, an employe of appellant, was in charge of a work train which was being used to transport ballast from a quarry two miles north of the railroad yards of appellant at Alton to a point five miles south of Alton. The engineer in charge of the engine was one Scherer. On the day in question, they started to run the train backward from Alton to the quarry. The weather was at the time foggy. The rules governing those in charge of trains which required that at such times two white lights should be displayed the same as at night was ignored. It was the duty of both Cuthbertson and Scherer before starting upon the trip to inspect the train register to ascertain whether a certain south bound train known as No. 53 had passed. Cuthbertson alone examined the register and informed Scherer that train No. 53 had passed, notwithstanding the register plainly showed that it had not. The train then proceeded toward the quarry and shortly thereafter collided with train No. 53 upon which appellee's intestate was employed as an engineer, thereby causing his death. The evidence further shows that Cuthbertson was about thirty-six years of age; that he had been employed as a brakeman for the Grand Trunk Railroad for about seven years; that thereafter he was employed by appellant as switchman for a period of five years; that in 1902, he left the employment of appellant and worked for the Illinois Terminal Railroad for eleven months as foreman of a switch engine; that during his employment by appellant he had served at various times as switchman, engine foreman and extra foreman and occasionally as extra conductor. To support the charge mentioned in her declaration appellee introduced in evidence a letter written and signed by Schaff, superintendent of appellant, under the following circumstances: In September, 1904, a

construction company was engaged in building an electric line near appellant's railroad just south of Alton. A contract was entered into by appellant to furnish the construction company with a train and crew to be used in transporting ballast for the line which was being constructed. Cuthbertson desired to be placed in charge of such train and requested appellant's local agent at Alton to use his influence to that end. The local agent thereupon communicated with Schaff and on September 25, 1904, received a letter from him containing the following statement: "I do not think that Cuthbertson is a competent man to put on this work train. I will try and arrange to put somebody on there who is familiar with the situation at Alton as soon as they call for it." In addition to the foregoing evidence one Steel, called by appellee, testified that in January, 1905, he asked Schaff why he didn't give Cuthbertson the charge of the construction train referred to and that Schaff replied that Cuthbertson "was not competent to take hold of that work." At this time Schaff had not examined Cuthbertson touching the duties required of one in charge of a train of that character. Cuthbertson continued his work as switchman, engine foreman and extra conductor until June, 1905, at which time he was placed in charge of a train as conductor. There is no evidence tending to show that he had ever before been involved in an accident, or that any of his fellow employes had complained that he was incompetent, or that his work was in any way unsatisfactory.

Schaff testified that during June, 1905, he examined Cuthbertson and Scherer as to their competency, and upon practically everything pertaining to the then new book of rules; that the examination did not differ from that which he made of all other employes engaged in the same service; that at the same time he examined them on the time-card and as to train orders, and that they passed the ordinary examination that related to employes; that prior to the date of the accident he had

personally inspected the work of Cuthbertson and that in the opinion of witness he was a competent person to put in charge of the train. Cuthbertson testified that he knew all the duties of a conductor to a certain extent; that he had not had any experience as a freight conductor and not much as a work train conductor except doing a little work outside the yards; that during June or July, 1905, he was examined in the depot at Alton; that Schaff asked the witnesses, Scherer and one McGowan, the foreman, some questions about the new books of rules, but that he could not swear whether that was a conductor's examination or not. There was evidence tending to show that the duties of a switchman or switch foreman are so radically different that experience in one position does not qualify a person to fill the other; that generally before permitting a person to run a train he was compelled to serve as a brakeman and then to submit to an examination on the time-card rules and train orders; that it was necessary to thoroughly learn the rules and that experience as a brakeman was essential to qualify a person to take charge of a train as conductor.

The burden was upon appellee to show by the greater weight of the evidence not only that Cuthbertson was incompetent at the time of the accident but also that prior thereto appellant had actual or implied knowledge of such incompetency. The jury were fully warranted in finding that he was incompetent. His failure to correctly read the train register under the circumstances amounted to palpable and gross negligence. If he failed to appreciate the necessity for the exercise of unusual care and the obvious probable results of a failure to do so, he was beyond question utterly unfit to be entrusted with the duties imposed upon him. We do not agree with counsel that incompetency can only be shown by evidence of frequent occurrences of imprudence, carelessness or incapacity. While a single act or omission does not necessarily establish incompetency as a matter of law, such act or

omission may tend so strongly to prove a person to be careless, imprudent and unfitted for a particular position, as to, of itself, warrant the submission of the question of his incompetency to a jury for determination as a matter of fact. The negligence of which Cuthbertson was guilty, was not a mere omission to exercise the highest degree of care and caution and presence of mind, of which experienced, vigilant and competent employes are not infrequently guilty. The avoidance of obstructions of the track over which it became necessary to run his train, through the untimely meeting with other trains or engines, was an ever-present duty and one of the most important imposed upon him, and could only be properly performed by a careful inspection of the train register. The statements of Schaff of his opinion as to the qualifications of Cuthbertson were not admissible in evidence as tending to show his unfitness at the time he was placed in charge of the train in question. If, however, his subsequent incompetency can be said to have been established, such statements were admissible as tending to show notice to appellant of such fact at the time they were made.

While appellant in its relation to the deceased was not bound to guarantee the absolute fitness of Cuthbertson, it was its duty nevertheless, when employing him as a conductor, to exercise a degree of care commensurate with the responsibilities and exigencies of the service required of one filling that position, in order that it might ascertain whether he was sufficiently qualified and competent. If it was not assured, by previous like services, of such fitness, it was its duty to institute affirmative inquiry to that end. Wabash Ry. Co. v. McDaniels, 107 U. S. 454; L. & T. H. R. R. Co. v. Guyton, 115 Ind. 450.

The proof that appellant through Schaff knew that he was incompetent in January, 1905, that he was still incompetent nine months thereafter, in connection with the further evidence tending to show that in the in-

terim he was not compelled to undergo as thorough an examination as those who are to be placed in charge of trains were ordinarily subjected by appellant and other railroad companies, and his unfamiliarity with the rules as shown by his testimony, impels us to the conclusion that the question as to whether by the exercise of ordinary care appellant would have known of the continuing incompetency of Cuthbertson, was proper to be submitted to the jury as an issue of law, and we are not at liberty to disturb the verdict returned in response thereto, unless the same is so clearly unwarranted by the evidence as to indicate that it was the result of manifest error or prejudice. We are unable to so hold.

It is urged that the damages are excessive. The evidence shows that the deceased was thirty-eight years of age, in good health and earning from $125 to $130 per month, and that he left surviving him a widow and child of the age of seven years. Notwithstanding the amount awarded is the maximum limit fixed by the statute in cases of this character, these considerations lead us to the conclusion that such sum is not clearly in excess of the damages resulting to his next of kin by reason of his death.

The judgment of the Circuit Court is accordingly affirmed.

*Affirmed.*