WILLIAM JAMES, Appellee, v. WINIFRED COAL COMPANY, Appellant.

MASTER AND SERVANT: Incompetency of Fellow Servant. In-
1  competency means want of ability which is adapted to the performance of a task, whether because of lack of experience, natural qualifications, or deficiency of disposition to properly use one's ability and experience. Evidence reviewed, and held to present a jury question as to the incompetency of a fellow servant, and as to the master's knowledge thereof.

LIMITATION OF ACTIONS: Amendments After Running of Stat-
2  ute. A *specific and detailed* allegation of negligence may, after the statute has run against an action, be substituted for a *general* allegation which had not, up to the time of substitution, been questioned.

TRIAL: Evading Ruling of Court. A ruling that counsel was at-
3  tempting, in his argument, to evade a ruling of the court with reference to reading from a transcript, will, ordinarily, be conclusive on the appellate court.

*Appeal from Appanoose District Court.*—C. W. VERMILION, Judge.

OCTOBER 18, 1918.

THIS is an action to recover damages for injuries received by plaintiff while employed in defendant's coal mine

at Mystic, Iowa. The necessary facts are stated in the opinion.—*Affirmed.*

*Howell, Elgin & Howell,* for appellant.

*Porter & Greenleaf,* for appellee.

STEVENS, J.—I. At the time of the accident, plaintiff was crawling across the cutter bar of a mining machine recently installed in the mine, which had been operated only

1. MASTER AND
SERVANT : in-
competency of
fellow servant.

by, or under the observation and direction of, an expert demonstrator. One Train, who claimed to have had nine years' experience in operating machines of similar construction in Scotland, and who was present, and who claims to have operated the machine for several days under the direction of the demonstrator, was employed by defendant to operate the machine. The injuries resulted from the unexpected starting of the machine by Train. The injury occurred in 1913.

Plaintiff and Train were fellow servants, and defendant is not liable for injuries caused by the negligence of the latter. The plaintiff alleged that Train was incompetent to run the mining machine; that defendant had full knowledge thereof, or, by the exercise of ordinary care, could have known of such incompetency, but for which the accident would not have happened.

The law is well settled that it is the duty of the master, not alone to exercise reasonable care to provide a reasonably safe place for his servants to work in, but also to exercise like care in the selection and employment of fellow servants. *Gregory v. Chicago, R. I. & P. R. Co.,* 147 Iowa 715; *Forney v. Mardis Co.,* 155 Iowa 667; *Wolters v. Summerfield Co.,* 160 Iowa 127; *Louisville & N. R. Co. v. Wyatt's Admr.,* 29 Ky. Law Rep. 437 (93 S. W. 601); *Odegard v. North Wis. Lbr. Co.,* 130 Wis. 659 (110 N. W. 809); *Peters*

*v. Southern Pac. Co.,* 160 Cal. 48 (116 Pac. 400) ; *Di Bari v. J. W. Bishop Co.,* 189 Mass. 254 (85 N. E. 89) ; *Consolidated K. C. S. & R. Co. v. Taylor,* 48 Tex. Civ. App. 605 (107 S. W. 889).

The evidence relied upon to establish Train's incompetency, in substance, was that he was unfamiliar with, and had never operated, the particular machine in question; that he had, for seven or eight years prior to the accident, worked simply as a miner in the mines at Mystic, and had nothing to do with mining machines; that he admitted to plaintiff and his wife, after the accident, that he knew nothing about the machine: while, on behalf of defendant, it is claimed that Train not only possessed experience, but, before coming to this country, became familiar with mining machines operated by compressed air and electricity; and that the difference between the machine in question and those which he had used in Scotland did not render the operation of defendant's machine more difficult. Upon this point, the evidence is somewhat conflicting. Plaintiff testified that he was present while the demonstrator was at the mine; and that Train did not operate the machine, but that same was run exclusively by the expert; that the former had never started or operated the same until the morning, and at the time, plaintiff was injured.

In this connection, it is well to consider the character, mechanism, use, and manner of operating the mining machine in question. It consisted of a combination of machinery, encased in an iron box, from one end of which a bar, called the cutter bar, extended at right angles. This cutter bar was 4 feet 9 inches in length, and was equipped with a series, or groups, of sharp picks. The machine weighed approximately 7,000 pounds, and was used to remove the earth from underneath the coal. When in motion, the machine made a loud noise, and the picks, attached to the cutter bar, were operated very rapidly by a revolving

chain. As the earth was loosened underneath. the coal, the machine was moved forward, so as to bring the picks in constant contact with the surface. The machine was moved forward by means of a heavy chain attached thereto, and to a "jack" or post set solidly about 70 feet in advance thereof. At the time of the accident, plaintiff, Train, and one Savage alone were present. The latter had gone forward to adjust the chain to the "jack," while plaintiff and Train were engaged in adjusting the machine, preparatory to starting the same in motion. When the earth is removed, props are placed in an upright position under the coal to keep it from falling until taken care of by the loaders. When in proper position, the full length of the cutter bar operates upon the surface; but, as the machine was placed at the time of the accident, only about two feet thereof was against the surface, and, plaintiff claims, had been cutting into the coal. After placing the prop, or "sprag," under the coal, plaintiff attempted to pass over the cutter bar, to avoid going around a distance, he claims, of about 300 feet. The evidence, however, upon this point is in conflict. Defendant claims there was sufficient space between the machine and the gob, which caused the obstruction, for plaintiff to pass, and that he should not have attempted to go upon the cutter bar. Plaintiff's narrative of the surroundings and what occurred is best stated in his own language, as follows:

"I put a sprag, and then we saw that machine had been cutting up into the coal. I suggested that we lift the back end of the machine up here, and throw the cutter bar down to get beneath the coal again. So I put a sprag up, when did that I was back here—at back end; sprag, a piece of timber; putting up sprags to hold the coal, keep it from falling until loader came along and would load it up; had put up sprag back of cutting bar. Train says, 'Where did you want this skid?' I says, 'Hold on a moment until I get

through.' Had no other way to come except across here, this place between the coal and machine. When I was in the act of crossing on my hands and knees (the skid was a board that was used, underneath the back end of the machine to draw the cutter bar down), just before I started between the machine and the coal, I says, 'Hold your hand a moment, and I will come and show you.' When I was in the act of getting over on my hands and knees, the helper shouts, 'Pull in the chain,' and he turned on the power. Helper was Emery Savage. When I started through, the machine was not running, nor was it when Train made that remark."

According to the testimony of Train, before starting the machinery, he was careful to see that everything was clear; in answer to a question of Savage's as to whether the power was on, he replied he thought so, but would try it and see; before doing so, he said, "All right, all clear;" at the time, plaintiff was standing from 5 to 7 feet in the rear of the machine; when it commenced operating, he was at least 7 feet from it; there was no occasion or duty requiring him to go upon the cutter bar, or expose himself to danger. Savage testified that no skids were placed under the machine; that the cutter bar was not cutting into the coal; that plaintiff did not make the statement claimed by him, immediately before the accident; and otherwise and generally substantially corroborated Train's testimony. The power was turned on by the movement of a lever; but the machine was so constructed that the chain which Savage was attempting to adjust to the "jack" could be placed in motion and adjusted without setting the picks in motion. For a better understanding of the machine and its construction, we include herein a photograph thereof.

8.    Variety of Drive "A.C." or "D.C." electric motors are available, or Turbinair motors.
9.    Variety of Undercut Cutter bars are available in five lengths, from 24 to 66 inches.

Bulletin 63-MC.

Sullivan Alternating Current Longwall Ironclad.

Plaintiff testified that all of the parties present had on carbon lights, and that Train stood by the machine when he turned on the power.

The burden rested upon the plaintiff to show, by a fair preponderance of the evidence, that Train was incompetent; that same was known to the defendant, or, by the exercise of reasonable care, should have been known to it; and that such incompetency was the proximate cause of his injury. It would seem almost incredible that plaintiff, who, for several days, had observed the demonstrator operate the machine, would have gone upon the cutter bar when the picks were in motion; yet, if the testimony of Train and Savage is accepted, he must have done so. Likewise, it is difficult to understand how a skilled and competent operator, knowing the position of plaintiff upon the cutter bar, would have turned on the current, without having first adjusted the lever that released the picks from motion, while the necessary machinery, for the purpose of adjusting the chain, was set in motion. That plaintiff was in a position of peril at the time the current was turned on, would seem to

be the most reasonable deduction to be drawn from the evidence. A jury would not be likely to believe that, if he was several feet in the rear of a machine, which, when in operation, made a loud noise, in a position of perfect safety, he would voluntarily go upon the cutter bar and expose himself to certain injury. It was a question of fact for the jury to determine whether, even though it was necessary to start a part of the machinery in operation in the adjustment of the chain, a skilled and competent operator would have done so without having first taken the precaution to throw the dangerous machinery out of gear. The jury might reasonably have inferred that Train did not fully comprehend the mechanism of the machine, or the danger to plaintiff of turning on the current without releasing the cutter bar; or that he was unfamiliar with the use and purpose of the various levers with which the machine was equipped; and that he turned on the current without intending to do so. During the eight or nine years preceding the accident, he had worked as a miner, and had not used or operated a mining machine since he left Scotland, except, as he claims, under the instruction and observation of the demonstrator, as above stated. Plaintiff testified—but this is denied by Train—that, immediately after the current was turned off, Train exclaimed to him: "I wish to God I hadn't started with this. I told Tom Williams I didn't know a thing about it." Mrs. James testified that, upon another occasion, Train stated, in her presence, that the whole machine was strange and foreign to him. So far as the record shows, it does not appear that the machine was complicated or that long experience would be necessary to acquire reasonable efficiency and skill in its operation; but the question of Train's competency was submitted to the jury under proper instruction, and with ample caution by the court, and there was evidence to sustain the verdict. Incompetency, in the law of master and serv-

ant, means want of ability adapted to the performance of a task, either because of lack of experience, natural qualifications, or deficiency of disposition to use one's ability and experience properly. *Curran v. A. H. Stange Co.*, 98 Wis. 598 (74 N. W. 377) ; *Furlong v. New York, N. H. & H. R. Co.*, 83 Conn. 568 (78 Atl. 489) ; *Staunton Coal Co. v. Bub*, 119 Ill. App. 278; *Tucker v. Missouri & K. Tel. Co.*, 132 Mo. App. 418 (112 S. W. 6) ; *Maitland v. Gilbert Paper Co.*, 97 Wis. 476 (72 N. W. 1124).

Evidence of a single accident would not make out a prima-facie case of incompetency; yet the courts have held that the facts and circumstances surrounding the occurrence may tend strongly to so indicate, and may be considered by the jury upon this question. *Pittsburg Rys. Co. v. Thomas*, 174 Fed. 591; *Holland v. Southern Pac. Co.*, 100 Cal. 240 (34 Pac. 666) ; *Consolidated Coal Co. v. Seniger*, 179 Ill. 370 (53 N. E. 733) ; *Smith v. Chicago, P. & St. L. R. Co.*, 143 Ill. App. 128; *Evansville & T. H. R. Co. v. Guyton*, 115 Ind. 450 (17 N. E. 101) ; *Baulec v. New York & H. R. Co.*, 59 N. Y. 356, 363.

Upon the question of defendant's knowledge of Train's alleged incompetency, it appears from the evidence that an officer of a local labor union complained to Williams, the principal owner and superintendent of the mine, that the demonstrator, and not a union employee, was running the machine, and that, during the conversation, Train's name was not mentioned; but Williams said to him that the demonstrator would not be there long enough to join the union; that the man who was working with the machine did not know how to run it; and that they had no other man in their employ who had ever previously run that particular kind of machine.

Williams testified that, before the employment of Train, he interrogated him fully as to his knowledge of mining machines of the character in question, and his experience

in operating the same, and that his answers were satisfactory and reassuring, and that he had observed him in the mines, and knew him to be a careful and prudent person. The evidence of knowledge upon defendant's part of Train's alleged incompetency is not very convincing. If, however, plaintiff's testimony is true, defendant had never seen Train operate the mining machine; and there is no evidence, except that of Train, that he was experienced in such work before coming to this country. It was the duty of defendant to exercise reasonable care to ascertain whether Train was competent to operate the machine, and it was a question of fact for the jury to determine whether such care was observed by it in employing him. *Robbins v. Lewiston, A. & W. St. R. Co.,* 107 Me. 42; *Still v. San Francisco & N. W. R. Co.,* 154 Cal. 559 (98 Pac. 672); *Neilon v. Kansas City R. Co.,* 85 Mo. 599; *Pleasants v. Raleigh & A. R. Co.,* 121 N. C. 492 (28 S. E. 267); *Place v. Grand Trunk R. Co.,* 82 Vt. 42 (71 Atl. 836).

It is not material that the finding of the jury upon the question of Train's incompetency or defendant's knowledge thereof, or whether, had defendant exercised due care to ascertain his competency before employing him, it would have known thereof, may or may not be in harmony with the views of this court, as the findings of the jury upon disputed questions of fact are conclusive and binding upon the court.

II.    Thirty-six of the sixty-two assignments of error relate to rulings of the court upon questions of evidence. It is manifestly impossible, within the reasonable length of an opinion, to discuss these separately. As we understand counsel for appellant, he does not seriously contend that a reversal based upon any separate ruling of the court should be granted, but that, taken together, error and prejudice are shown. Numerous objections urged were exceedingly technical; others are without substantial merit; while, possibly, a few might well have been sustained. However,

after a careful consideration of the rulings complained of, we reach the conclusion that prejudicial error in ruling upon objections to evidence is not shown.

III. Plaintiff was injured in 1913, and did not commence suit until some time in 1915. The verdict was returned on February 15, 1917. On January 13, 1917, plaintiff filed an amendment to his petition, in which he set out, specifically and in detail, the particular acts of negligence complained of. Counsel for defendant moved the court to strike this amendment from the files, upon the ground that the cause of action therein stated was barred by the statute of limitations. No specific grounds of negligence were stated in the original petition, nor was same assailed by motion for more specific statement. We have repeatedly held that, where the amendment does not state a new cause of action, but only elaborates, or amplifies, the charge made in the prior pleadings, or states new grounds of specifications germane to such charges or allegations, the amendment will be upheld, without regard to the statute of limitations. *Palmer v. City of Waterloo,* 138 Iowa 296; *Gordon v. Chicago, R. I. & P. R. Co.,* 129 Iowa 747; *Sachra v. Town of Manilla,* 120 Iowa 562.

2. LIMITATION OF ACTIONS: amendments after running of statute.

IV. Counsel for defendant offered a large number of instructions, all of which were refused; but many of the suggestions contained therein were embodied in the court's charge. As we are fully convinced that the instructions given by the court correctly stated the law, and fully submitted defendant's theory to the jury, we refrain from detailed discussion of the requested instructions.

V. Vigorous complaint is made by appellant of remarks and conduct of counsel for plaintiff during the trial. There appear to have been frequent clashes between counsel,

3. TRIAL: evading ruling of court.

and occasional differences of opinion between the court and counsel for appellant. The attorney for plaintiff was unnecessarily sarcastic, and indulged in the use of language that was probably not justified by the record. Frequent objections were made by the counsel for plaintiff, during the closing argument of defendant's attorney, some of which were justified, while others were without merit. The court was present during the argument, heard and passed upon the objections of counsel, and was in a much better position to determine whether there was improper conduct upon the part of plaintiff's attorney and whether prejudice resulted therefrom, than this court. Remarks of the trial court in ruling upon objections are also criticized by counsel. In response to statements made by plaintiff's attorney in argument to the jury, defendant's attorney undertook, in argument, to read to the jury a transcript of certain parts of the testimony. The court sustained the objection of plaintiff's counsel to the reading of the transcript; whereupon, and after some colloquy between counsel and the court, the attorney placed the transcript upon the table in front of him, and claimed the right to use it for the purpose only of refreshing his recollection, and to state his version of the evidence to the jury. The court held that counsel was seeking to evade its ruling. Necessarily, the trial court was in better position to determine this question than we are, and it does not appear that the court exceeded or abused its proper discretion.

VI. Shortly after the accident, an arrangement was made between plaintiff and defendant by which the latter continued to pay plaintiff wages, until $1,111 was paid to him. Defendant pleads that the above sum was paid, and received by plaintiff, in full and complete settlement of the damages suffered by him. The evidence was in conflict as to whether the payments were made voluntarily by defend-

ant, or in pursuance of an agreed settlement. The question was submitted to the jury upon instructions substantially in the form asked by defendant, and its finding is conclusive. The court, however, instructed the jury that, if it found in favor of plaintiff for a sum in excess of the amount of the payments made, credit should be given upon the verdict therefor. Surely, defendant was not thereby prejudiced.

VII. Affidavits of jurors were attached to defendant's motion for new trial, for the purpose of showing misconduct of the jury, while deliberating upon its verdict; but counter affidavits filed by plaintiff tended strongly to show that no misconduct occurred. We are content with the ruling of the trial court upon this point. Other questions argued by counsel have not been overlooked, but are not of controlling importance.

The record, which, together with the argument of counsel for appellant, is quite voluminous, has had careful and thorough consideration; and we are not convinced that defendant was denied a fair trial in the court below. As we find no error, its judgment is—*Affirmed.*

PRESTON, C. J., WEAVER AND GAYNOR, JJ., concur.