# CASES

# FIRST DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

### DURING THE YEAR 1910.

## Louis M. LaChappelle, Appellee, v. Allis-Chalmers Company, Appellant.

## Gen. No. 15,154.

MASTER AND SERVANT—*what tends to establish incompetency of servant.* The incompetency of a servant to discharge the duties of his position is not established only by proof of his general reputation but by testimony of many instances of carelessness and negligent conduct in the performance of such duties.

BAKER, J., dissenting.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in this court at the October term, 1908. Reversed on rehearing. Opinion filed October 6, 1910.

**Statement by the Court.** This action is between master and servant for personal injuries suffered by the servant as the result of alleged negligent conduct on the part of two other servants of the same master. The trial in the Superior Court was a jury trial. A verdict was returned finding the defendant master guilty of the negligence charged and awarding the servant plaintiff damages to the amount of $15,000, upon which verdict the court entered a judgment after overruling defendant's motions for a new trial and in arrest of judgment.

Many errors are assigned upon the record, and the argument discusses these assignments under six different heads. In the conclusion to which we have arrived it will be unnecessary for us to pass upon more than the one crucial and controlling question, viz: Does the evidence sustain by its preponderating force the material averments of those counts of the declaration under which the cause was submitted to the jury, or is the verdict manifestly contrary to the weight of such evidence?

Plaintiff was working in a switching crew of defendant at the time of the accident, in its yards at West Allis, Wisconsin. There were two switching crews employed in these yards; one known as the Clancy crew, operating in conjunction with engine 1024, and the other, known as the Donnelly crew, operating in conjunction with engine 1087. William H. Snyder was the engineer on engine 1024, operating with the Clancy crew, and Albert M. Snyder, his brother, was engineer on engine 1087, operating with the Donnelly crew. Plaintiff at the time of the accident was working with the Clancy crew. There was one main track and a lead or stem track, from which branched out five tracks used for storing cars, and several other tracks leading to various buildings in which machinery was manufactured. West of the lead track and 374 feet south from where it joined the main track was a scale house, east of which were tracks on which cars were weighed. On February 13, 1906, a car had been "kicked" onto the scale track by engine 1024, whereupon Donnelly was ordered to take two cars of gravel from track 5, where they were stored, to some construction work which could be reached by going over a Y back of the scale house. While plaintiff was engaged in opening a knuckle at the north end of the car on the scale track, Donnelly ordered the engineer on 1087 to back in against the scale car, not then knowing that plaintiff was opening the knuckle at the north end of it. After Donnelly gave a signal the engine came rapidly against the south end of the car on the scale track, knocking it to the north several feet, and plaintiff

was thrown down and his arm crushed between the bumpers of his car and engine 1024.

The declaration as originally drawn charged in one count that the injuries were wilfully and wantonly inflicted; in a second count that the coupler on engine 1024 was out of repair and defective; in a third count that defendant was liable under a Wisconsin statute; and in a fourth count charged that plaintiff had not sufficient experience to appreciate the dangers incident to switching service, and that defendant was negligent in failing to warn plaintiff of the dangers to be encountered. On the trial all the foregoing mentioned counts were dismissed out of the case, which went to the jury on three additional counts, which are in substance to the following effect. In one of these counts the negligence on which plaintiff predicated the right to recover was that defendant "carelessly and negligently employed and kept in its employ a certain servant, to-wit, one Charles Donnelly, whom it knew, or by the exercise of reasonable care might have known, was a careless, negligent and incompetent servant, addicted to the excessive use of intoxicating liquors, and who was on, to-wit, the date aforesaid, strongly under the influence of intoxicating liquor, and that he, the said plaintiff, did not know of said Donnelly's carelessness, negligence and excessive use of intoxicating liquor and had not equal means with said defendant of knowing such facts; and plaintiff alleges that the said Donnelly was the foreman in charge of said other crew so moving said engine and cars, and by reason of the carelessness and negligence of said defendant in keeping in its employ and placing in charge of said crew said Donnelly said other engine, tender and train of cars were carelessly backed on said track scale platform and against said car which he, the said plaintiff, was coupling as aforesaid, and he was thereby greatly hurt," etc. In another of these three counts the negligence charged is that defendant "carelessly and negligently employed and kept in its employ a certain servant as engineer of said other train upon engine 1087, and this defendant

then knew, or with the exercise of reasonable care might have known, that said engineer on said engine 1087 was and for a long time previous thereto had been a careless, negligent and incompetent servant, and that he, the said plaintiff, did not know that said engineer on said engine 1087 was a careless, incompetent and reckless servant, and had no equal means with said defendant of knowing said facts; the plaintiff alleges that the said engineer had charge of the said engine, and by reason of the carelessness and negligence of said defendant in keeping in its employ and placing in charge of said engine the aforesaid engineer, said other engine was carelessly operated on said track while the plaintiff was there necessarily engaged in the course of his duties and against the said cars in the plaintiff's train, whereby while the plaintiff was coupling one of said cars as aforesaid, the said cars were suddenly started and he was thereby greatly hurt," etc.    And in the remaining count of the three, the negligence of defendant is alleged to consist in its employing and keeping employed the said Donnelly, who was incompetent, etc., because of the reasons set out and averred in the first of three counts under which the case went to the jury, with the additional averment, viz, that said Donnelly was of an excitable temperament, quarrelsome disposition, absent minded and careless in giving and ordering signals and in running switches; that on the day of the accident defendant negligently retained said Donnelly in its employ although it then and there knew, or ought to have known in the exercise of reasonable care, of Donnelly's shortcomings as before set out, and that plaintiff had no such knowledge, and that by reason of Donnelly's known unfitness, etc., the accident to plaintiff occurred, etc.    The general issue constituted defendant's pleading.

CALHOUN, LYFORD & SHEEAN, for appellant.

CHARLES M. FOELL and EARL J. WALKER, for appellee.

MR. PRESIDING JUSTICE HOLDOM delivered the opinion of the court.

Whether plaintiff was injured in consequence of the negligence of Donnelly or Snyder, singly or in combination, is not necessarily important to his right to recover unless defendant was negligent in respect to one or more of the delinquencies charged in the declaration, as it stood at the time the cause was submitted to the jury, as constituting such negligence. From the statement preceding this opinion it appears such negligence consisted in defendant's employing and retaining in its employ two incompetent servants, one Donnelly, the head switchman of engine 1087 crew, and Alfred M. Snyder, its engineer, defendant having knowledge, either actual or imputable, of such incompetency. The law cast upon plaintiff the burden of sustaining, by a preponderance of the evidence, the charge of incompetency of one or the other or both of these two servants and that such incompetency resulted in the negligent act which proximately caused the injury complained of. We are of opinion that the evidence pro and con on these propositions fails to sustain the incompetency charged against either of these servants, or that the delinquencies charged against them were known to or should have been known to defendant in the exercise of due diligence, or that any of the acts or conduct proven against either of them was of such a character as to fasten upon the master knowledge that either of them were incompetent servants, not to be trusted to discharge the duties imposed upon them by their employment. On the contrary, it is our deliberate opinion that the evidence absolutely fails to sustain any of the charges of incompetency of either of these two servants. In weighing the testimony it must not be lost sight of that general reputation is of no controlling force unless supported by specific instances of conduct amounting to carelessness or negligence. So, therefore, the testimony of a witness as to general reputation, without citation of any concrete fact or instance of negligence or carelessness, is of little, if any, weight as evidence sustaining the charge either of negligence or careless-

ness.   Nor would such reputation alone constitute notice to the master of incompetency, or prove that such servant was in fact incompetent.   The rule is, we think, correctly stated in a foot note to State v. Broderick, 14 L. R. A. (N. S.), 704–5, as follows: "The incompetency of a servant to discharge the duties of his position is not established only by proof of his general reputation, but by testimony of many instances of carelessness and negligent conduct in the performance of such duties;" and that such rule is sustained by the doctrine of Consolidated Coal Co. v. Seniger, 179 Ill. 370.

It is fairly inferable from all the testimony in this record that the members of the two switching crews came daily in contact with each other in the discharge of their kindred duties, so that each could be said to have exerted some influence over the other in the performance of their several allied tasks and to acquire knowledge of the habits, conduct and reputation of each other.

At the time of the accident plaintiff had been in the service of defendant about ten months.   For six or seven months of this time he worked as a switchman with the same crew in which he was working at the time he was injured. Donnelly and Alfred M. Snyder had been long in the service of defendant, Donnelly about fourteen years and Snyder about twenty-one years.   There is little room for doubt that they were both capable men and thoroughly well able, through long years of practical experience, to discharge the duties of their several positions with efficiency.   In no aspect of the evidence could they be considered incompetent to perform the duties intrusted to them.   So that in the final analysis of the testimony, the question for solution is not their competency, but the fact, under the averments of the counts under which the case was submitted to the jury, whether Donnelly was, by reason of his alleged intemperance, carelessness and recklessness in doing his work, an unsafe man to do the work he was employed to do, and whether Snyder was so "bull headed" and careless in the discharge of his duties as to be unfit to perform his work as an en-

gineer, and whether negligence is imputable to defendant in retaining these men in its employ.

The record discloses that five witnesses sworn for plaintiff testified as to the reputation and conduct of Donnelly and particularly as to his alleged habit of intemperance, and twelve witnesses produced by defendant testified to the contrary and supported the contention of defendant that Donnelly was a temperate and sober man. Plaintiff's witnesses were Godfrey, Dunn, Borges, Seeberg and Nyhus. If the testimony of these witnesses is worthy of credit, then the reputation of Donnelly for intemperance was so notorious that it must have been known to everyone with whom he was associated and could not have failed to be observed by any person who came in daily contact with him, as plaintiff undeniably did. If such be the fact, then plaintiff had knowledge thereof, and by continuing thereafter in the employment of defendant in the same department of work with Donnelly he assumed the risk attendant upon continuing to work with a man who had such notoriously intemperate habits as Donnelly is claimed to have had, according to the testimony of these witnesses of plaintiff. It is contended that Donnelly was under the influence of liquor on the morning of the accident, and the witness Godfrey did so swear, but Godfrey was himself discharged from defendant's employ for drunkenness. Dunn was a saloonkeeper, who had previously worked for defendant, and he swore that Donnelly was one of his regular patrons and was an intemperate man. Dunn himself had indulged in drink just before being sworn as a witness. Borges had worked for defendant about six or seven months three years before the accident, and was of the age of eighteen years when in defendant's employ. Seeberg worked for defendant and was discharged because of a dispute between himself and Nyhaus. The witness Nyhaus was in the employ of defendant only two months. A statement made by Frank Beggs, who witnessed the accident, was read in evidence by plaintiff as an impeachment of his testimony given from the witness stand, and among other things he stated that Donnelly had been drinking on the day

of the accident.   Arrayed against these witnesses are those of the defendant, twelve in number, who all give Donnelly a good reputation for sobriety.   Strange, however, is the fact that plaintiff himself did swear that during all of the ten months of his association with Donnelly, more or less close and continuing day after day for more than six months, he was unable by any act or conduct on his part to discover that Donnelly had been drinking or was an habitually intemperate man or addicted to the drinking habit.   The witnesses of defendant who supported Donnelly's reputation for sobriety were Sheridan, a lawyer, Westphal, whose tenant he was, a neighbor named Brett, a priest named Burdock, at whose church Donnelly and his family were attendants; Espenard, a former landlord, who had known him four years; Zophy, Doller, Beggs, Johnson and both the Snyders, who had worked with Donnelly for varying and long periods of time at the works of defendant. All of these witnesses were employes of defendant and had worked for defendant for much greater length of time than had any of the plaintiff's witnesses, Alfred M. Snyder having been in such employment twenty-one years.   It is quite apparent that defendant's witnesses had a better opportunity of knowing intimately the character and reputation of Donnelly than any of plaintiff's witnesses possibly could have, and consequently their testimony is worthy of greater credence as being the most trustworthy.   As to Alfred M. Snyder's competency to run switch engine 1087 there can hardly be divergent opinions after a careful reading of the evidence.   He had been in defendant's employ twenty-one years.   He ran a stationary engine for fifteen years, then acted as fireman on his brother William's engine for five months, and after that ran a switch engine in defendant's yards.   Such long continued employment in one establishment would denote to the unprejudiced mind character for stability.   The transition from a stationary to a locomotive engineer would seem to have progressed along natural lines. It is matter of common knowledge that firemen on locomotive engines graduate to and become locomotive engineers.

In fact such engineers are mostly recruited from the ranks of firemen. We are unable to say from this testimony that there was anything, either in the training or conduct of Alfred M. Snyder, which would justify his being stigmatized as an incompetent engineer or one that defendant could not employ and retain in its employment without being amenable to the charge of negligence in so doing. We therefore hold that defendant was not guilty of actionable negligence in employing or retaining in his employ either Donnelly or Alfred M. Snyder.

The judgment of the Superior Court is reversed.

*Reversed.*

MR. JUSTICE BAKER dissents.